1  OFFICE OF THE ATTORNEY GENERAL
   Edward Manibusan
2  Attorney General
   James M. Zarones (T0102)
3  Assistant Attorney General
   Hon Juan A. Sablan Mem. Bldg., 2nd Floor
4  Saipan, MP 96950-8907
   Tel: (670)-664-9023
5  Fax: (670)-664-2349
   e-mail: jzarones@dps.gov.mp
6  Attorney for Defendant Commonwealth

7                **IN THE UNITED STATES DISTRICT COURT**
                             **FOR THE**
8       **COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS**

9
   LI-RONG RADICH AND
10 DAVID RADICH,                          Civil Action No. 14-0020

11              Plaintiffs,               **OPPOSITION TO MOTION FOR**
                                          **SUMMARY JUDGMENT**
12         v.

13 JAMES C. DELEON GUERRERO, in his
   official capacity as Commissioner of the
14 Department of Public Safety of the
   Commonwealth of the Northern Mariana
15 Islands,

16              Defendant.

17
          **NOW INTO COURT**, through undersigned counsel comes Defendant James C. Deleon
18
19 Guerrero, in his official capacity as Commissioner of the Department of Public Safety for the

20 Commonwealth of the Northern Mariana Islands, and hereby opposes the Plaintiffs' Motion for

21 Summary Judgment filed on January 10, 2015. The legal basis for the Defendant's Opposition is

22 more fully set forth in the Memorandum which is filed contemporaneously with this Opposition.

23 RESPECTFULLY                 OFFICE OF THE ATTORNEY GENERAL
   SUBMITTED.
24

25 DATED: February 9, 2015        /s/_____
                                  James Zarones (T0102)
26                                Assistant Attorney General
                                  Attorney for Defendant
27

28

| | |
|---|---|
| 1 | **CERTIFICATE OF SERVICE** |
| 2 | I hereby certify that the above and foregoing was electronically filed on February 9, |
| 3 | 2015, with service requested to all parties of record. |
| 4 | |
| 5 | /s/_____ |
| | James Zarones, Bar No. T0102 |
| 6 | Assistant Attorney General |
| | Office of the Attorney General |
| 7 | Counsel for Department of Public Safety |
| | Commonwealth of the |
| 8 | Northern Mariana Islands |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

1  OFFICE OF THE ATTORNEY GENERAL
   Edward Manibusan
2  Attorney General
   James M. Zarones (T0102)
3  Assistant Attorney General
   Hon Juan A. Sablan Mem. Bldg., 2nd Floor
4  Saipan, MP  96950-8907
   Tel: (670)-664-9023
5  Fax: (670)-664-2349
   e-mail:  jzarones@dps.gov.mp
6  Attorney for Defendant Commonwealth

7

## IN THE UNITED STATES DISTRICT COURT
### FOR THE

8

### COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

9  **LI-RONG RADICH AND
   DAVID RADICH,**

10

                **Plaintiffs,**

11         **v.**

12  **JAMES C. DELEON GUERRERO, in his
   official capacity as Commissioner of the**

13  **Department of Public Safety of the
   Commonwealth of the Northern Mariana**

14  **Islands,**

15

                **Defendant.**

16

17

18

19

20

21

22

23

24

25

26

27

28

Civil Action No. 14-0020

**MEMORANDUM IN SUPPORT OF
OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................................... 1

II.  LEGAL STANDARD .................................................................................................... 2

III. EVIDENTIARY OBJECTIONS ....................................................................................... 2

IV.  THE COURT SHOULD DISMISS PLAINTIFFS' COMPLAINT FOR LACK OF SUBJECT MATTER

     JURISDICTION ......................................................................................................... 4

     A.   THE COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION OVER COUNT I OF THE COMPLAINT

          BECAUSE HANDGUNS CANNOT BE LEGALLY IMPORTED INTO THE COMMONWEALTH ........................... 6

     B.   THE COURT DOES NOT HAVE JURISDICTION OVER PLAINTIFFS' CLAIMS BECAUSE THEY HAVE NOT

          DEMONSTRATED THAT THEY ARE ENTITLED TO WEAPON IDENTIFICATION CARDS ................................... 8

     C.   THE COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION OVER THE CLAIMS BROUGHT BY LI-RONG

          RADICH BECAUSE SHE IS NOT ENTITLED TO POSSESS FIREARMS IN THE COMMONWEALTH .................. 10

     D.   THE COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION OVER PLAINTIFFS' CLAIMS BECAUSE THE

          PLAINTIFFS HAVE NOT ATTENDED AND COMPLETED THE FIREARM SAFETY CLASS REQUIRED BY LAW ... 11

     E.   CONCLUSION ................................................................................................................... 12

V.   THE HELLER-MCDONALD CONSTRUCTION OF THE SECOND AMENDMENT IS NOT

     APPLICABLE TO THE COMMONWEALTH BECAUSE IT DIRECTLY CONTRADICTS THE

     INTENT OF THE FRAMERS OF THE COVENANT ......................................................... 12

VI.  COUNT I ................................................................................................................ 20

     A.   THE SECOND AMENDMENT DOES NOT PROTECT THE RIGHT TO POSSESS HANDGUNS IN THE

          COMMONWEALTH .............................................................................................................. 20

VII. CONCLUSION ......................................................................................................... 24

**Cases**

*Brown v. General Services Administration*, 425 U.S. 820, 828 (1976) ...................................... 19

*Catholic League for Religious & Civil Rights v. City & Cnty. of San Francisco*,
    624 F.3d 1043, 1053 (9th Cir. 2010) ........................................................... 5, 6, 9, 11

*Celotex Corp. v. Catreit*, 477 U.S. 317, 323 (1986) ................................................ 2, 9

*City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983) ................................................ 4

*Confederated Tribes & Bands of Yakama Indian Nation v. Locke*, 176 F.3d 467,
    469 (9th Cir. 1999) ............................................................................... 7

*D.C. v. Heller*, 554 U.S. 603, 628-629 (2008) ........................................... 20, 21, 22, 23

*Ex parte Young*, 209 U.S. 123, 157 (1908) ........................................................... 7

*FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990) ................................................... 4

*Get Outdoors II, LLC v. City of San Diego*, Cal., 506 F.3d 886, 891 (9th Cir.
    2007) ............................................................................................. 4

*Great Northern Ry. Co. v. Sunburst Oil & Refining Co.*, 287 U.S. 358, 365 (1932) ................. 14

*Hill v. Equitable Trust Co.*, 851 F.2d 691, 695-96 (3rd Cir. 1988) ................................ 14

*Los Angeles Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992) .............................. 7

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) ................................... 4, 5, 9

*Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102-03
    (9th Cir. 2000) ................................................................................ 2, 9

*Nuclear Info. & Res. Serv. v. Nuclear Regulatory Comm'n.*, 457 F.3d 941, 955
    (9th Cir. 2006) ............................................................................... 5, 11

*Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) .................................... 3

*Pepper & Tanner, Inc. v. Shamrock Broad., Inc.*, 563 F.2d 391, 395 (9th Cir.
    1977) ............................................................................................. 2

*Presser v. Illinois*, 116 U.S. 252, 265 (1886) ...................................................... 14

*Renne v. Geary*, 501 U.S. 312, 319 (1991) ........................................................... 5

*Silveira v. Lockyer*, 312 F.3d 1052, 1060-66 (9th Cir. 2002) ....................................... 14

*Snoeck v. Brussa*, 153 F.3d 984, 986 (9th Cir. 1998) ................................................ 7

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103-04 (1998) .............................. 4

*Stevens v. United States*, 440 F.2d 144, 149 (6th Cir. 1971) ...................................... 13

*United States v. Emerson*, 270 F.3d 203 (5th Cir. 2001) ........................................... 14

*United States v. Johnson*, 497 F.2d 548, 550 (4th Cir. 1974) ...................................... 13

*United States v. Miller*, 307 U.S. 174 (1939) ..................................................... 14

*Valley Forge Christian College v. Americans United For Separation of Church
    and State*, 454 U.S. 464, 472 (1982) ............................................................ 5

*Zicherman v. Korean Air Lines Co., Ltd.*, 516 U.S. 217, 226 (1996) ................................ 16

**Statutes**

1 CMC § 2553(i) .................................................................................. 6, 7

28 U.S.C. § 1746 .................................................................................... 4

48 U.S.C. § 1806 .................................................................................................................. 10

6 CMC § 2204 ..................................................................................................................... 10

6 CMC § 2204(a) ................................................................................................................... 9

6 CMC § 2204(d) ......................................................................................................... 9, 11, 12

6 CMC § 2204(l) ............................................................................................................. 10, 11

6 CMC § 2205(a) ................................................................................................................... 9

6 CMC § 2301(a)(3) .............................................................................................................. 6

6 CMC § 2301(b) ................................................................................................................... 6

6 CMC § 2303(a) ................................................................................................................... 6

6 CMC §§ 2204(f)(1)-(6) ....................................................................................................... 9

6 CMC §§ 2222(e) ............................................................................................................. 6, 22

6 CMC §§ 2222(e) ............................................................................................................. 7, 8

6 CMC §§ 2301-2303 ..................................................................................................... 1, 6, 7

6 CMC §§ 2301-2306 ............................................................................................................ 8

63 TTC § 551 ...................................................................................................................... 22

Public Law 17-1 § 5(c) ......................................................................................................... 10

Public Law 7-38 ................................................................................................................... 10

TT PL 4C-13 § 1 .................................................................................................................. 22

**Other Authorities**

Gary Kleck & Marc Gertz, *Armed Resistance to Crime: The Prevalence and Nature of Self-Defense with A Gun*, 86 J. Crim. L. & Criminology 150, 160 (1995) .................................................................................................................. 22

Willens & Siemer, *An Honorable Accord* (2002) ................................................................ 16

Willens & Siemer, *The Constitution of the Northern Mariana Islands: Constitutional Principles and Innovation In a Pacific Setting*, 65 Georgetown L.J. 1373, 1585-86 (1977) ................................................................................. 16

**Rules**

Fed. R. Civ. P. 12(h)(3) ........................................................................................................ 12

Fed. R. Civ. P. 56(a) .............................................................................................................. 2

Fed. R. Civ. P. 56(c)(2) .......................................................................................................... 2

Fed. R. Civ. P. 56(e) .......................................................................................................... 3, 5

Fed. R. Civ. P. 56(f)(1) ........................................................................................................ 24

Fed. R. Evid. 401 ................................................................................................................... 3

Fed. R. Evid. 602 ................................................................................................................... 3

Fed. R. Evid. 901(a) .............................................................................................................. 3

**Constitutional Provisions**

Covenant § 102 ................................................................................................................... 13

Covenant § 103 ................................................................................................................... 18

Covenant § 203(c) ............................................................................................................... 18

Covenant § 501 ................................................................................................................... 15

Covenant § 501(a) ......................................................................................................... 13, 18

NMI Const. Trans'l Matters § 2 ......................................................................................... 22

**<u>Secondary Sources</u>**

NMIAC § 70-10.1-020 ........................................................................................................ 6, 7

## I.    INTRODUCTION

The Plaintiffs do not have standing to challenge the Weapons Control Act because a favorable decision by the Court would not redress their alleged injuries. First, the Plaintiffs have not challenged the constitutionality of 6 CMC §§ 2301-2303, which prohibits the importation of handguns into the Commonwealth. Second, the Plaintiffs have not established that they are entitled to an identification card issued pursuant to the Weapons Control Act. Third, the Plaintiffs have not attended and successfully completed the Mandatory Firearm Safety Class which is required by law prior to the issuance of an identification card. Finally, Li-Rong Radich is not entitled to an identification card because she is not a citizen or national of the United States.

If the Court finds that the Plaintiffs have standing to challenge the Weapons Control Act, then the Court should hold, that where a subsequent interpretation of a constitutional right is directly contrary to the known understanding of the framers of the Covenant, it may not be enforced against the Commonwealth, based on the fundamental principle that the intent of the framers is paramount when interpreting the Covenant. Here, Plaintiffs seek to impose upon the Commonwealth an interpretation of the Second Amendment which is directly contrary to the intent of the framers of the Covenant. Wherefore, the Defendant opposes Plaintiffs' Motion for Summary judgment as to all Counts.

If the Court finds that the Plaintiffs have standing to challenge the Weapons Control Act, then the Defendant opposes the Plaintiffs' motion for summary judgment as to Count I because handguns do not enjoy Second Amendment protection in the Commonwealth. Handguns are not constitutionally protected in the Commonwealth because they have never been used by law abiding citizens for the purpose of self-defense.

The Defendant will not address Count III of the motion for summary judgment because it

has been withdrawn by Plaintiff David Radich.

## II.    LEGAL STANDARD

Summary judgment should not be rendered unless "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must identify the pleadings, depositions, affidavits, or other evidence that it "believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catreit*, 477 U.S. 317, 323 (1986). "The burden of establishing the nonexistence of a 'genuine issue' is on the party moving for summary judgment." *Id.* at 330. (citations omitted). "This burden has two distinct components: an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party." *Id.* If the movant fails to discharge his initial burden of production, then the Court is not required to determine whether the movant has satisfied his burden of persuasion." *Id.* Further, "[i]f a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). "While suitable inferences may be drawn by the trial court in ruling on a motion for summary judgment, all such inferences are to be drawn against the moving party." *Pepper & Tanner, Inc. v. Shamrock Broad., Inc.*, 563 F.2d 391, 395 (9th Cir. 1977).

## III.    EVIDENTIARY OBJECTIONS

Defendant makes the following evidentiary objections, pursuant to Fed. R. Civ. P. 56(c)(2), to the declarations filed by Li-Rong Radich, David Radich, and certain exhibits offered by Plaintiffs in support of their motion for summary judgment.

| EVIDENCE OBJECTED TO | GROUNDS FOR OBJECTION |
|---|---|
| Sample Application for Weapon Identification Card | The Plaintiffs have not authenticated the document. "Authentication is a 'condition precedent to admissibility,' and this condition is satisfied by 'evidence sufficient to support a finding that the matter in question is what its proponent claims.' Fed. R. Evid. 901(a). We have repeatedly held that unauthenticated documents cannot be considered in a motion for summary judgment." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). "In a summary judgment motion, documents authenticated through personal knowledge must be "attached to an affidavit that meets the requirements of [Fed. R. Civ. P.] 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence." *Id.* at 773-774. |
| Screenshot of Website | Same objection as above. |
| Declaration of David Radich ¶ 7 | Relevance. The Plaintiff cannot establish that the Attorney General's review of a firearm application, prior to the sixty day time limitation, has a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without evidence." Fed. R. Evid. 401. |
| Declaration of David Radich ¶ 7 | Personal knowledge. The Defendant cannot testify as to whether or not the Office of the Attorney General reviewed his application for a Weapon Identification Card because he has no personal knowledge. An unnamed individual on a telephone call informing him of such is not sufficient. *See* Fed. R. Evid. 602. |
| Declaration of David Radich ¶ 9 | Legal conclusion. The Plaintiff is not asserting a fact. He is asserting a legal conclusion. |
| Declaration of Li-Rong Radich ¶ 8 | Legal conclusion. The Plaintiff is not asserting a fact. She is asserting a legal conclusion. |

| Declaration of David Radich and Li-Rong Radich | Both declarations fail to comply with 28 U.S.C. § 1746 and LR 7.1(b). Specifically, both declarations use grammatically unsound language which omits the word penalty. The language used in the declarations does not substantially comply with 28 U.S.C. § 1746 or LR 7.1(b) because the language does not convey to the declarant that there is a penalty for committing perjury. Therefore, the Court should sustain Defendant's objection and strike the declarations filed by the Plaintiffs. |
|---|---|

## IV.    THE COURT SHOULD DISMISS PLAINTIFFS' COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION

"[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). To establish standing under Article III of the Constitution the Plaintiff must demonstrate "1) an injury in fact which is 'actual, concrete, and particularized'; 2) a causal connection between that injury and the defendant's conduct; and 3) a likelihood that the injury can be redressed by a favorable decision of the court." *Get Outdoors II, LLC v. City of San Diego*, Cal., 506 F.3d 886, 891 (9th Cir. 2007) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). "This triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103-04 (1998) (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)). "[E]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561 (citations omitted). "In response to a summary judgment motion . . . the plaintiff . . . must 'set

forth' by affidavit or other evidence 'specific facts,' which for purposes of the summary judgment motion will be taken to be true." *Id.* (quoting Fed. R. Civ. P. 56(e)).

To establish redressability, the Plaintiffs must demonstrate that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Catholic League for Religious & Civil Rights v. City & Cnty. of San Francisco*, 624 F.3d 1043, 1053 (9th Cir. 2010) (quoting *Lujan* at 561). The redressability requirement ensures that the Court's resources are not wasted on fruitless academic arguments, but instead "that the legal questions presented to the court will be resolved. . . in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action." *Valley Forge Christian College v. Americans United For Separation of Church and State*, 454 U.S. 464, 472 (1982). In other words, redressability "depends on whether the court has the ability to remedy the alleged harm." *Nuclear Info. & Res. Serv. v. Nuclear Regulatory Comm'n.*, 457 F.3d 941, 955 (9th Cir. 2006).

In *Renne v. Geary* the Supreme Court expressed serious doubt as to whether the Plaintiff had standing to sue, because a separate unchallenged California statute prohibited the conduct which the Plaintiffs wished to engage in. *Renne v. Geary*, 501 U.S. 312, 319 (1991). Similarly, in *Nuclear Information and Resources Services* the Ninth Circuit Court of Appeals held that the Plaintiff could not establish redressability when a separate statute or regulation, not before the Court, prohibited the conduct that the Plaintiff wished to engage in. *Nuclear Info. & Res. Serv.*, 457 F.3d at 955.

The Court may not exercise subject matter jurisdiction over Plaintiffs claims because a favorable decision by this Court will not redress the Plaintiffs' alleged injuries. Wherefore, the Court should dismiss Plaintiffs' claims for lack of subject matter jurisdiction.

**A.     THE COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION OVER COUNT I OF THE COMPLAINT BECAUSE HANDGUNS CANNOT BE LEGALLY IMPORTED INTO THE COMMONWEALTH**

The Court cannot exercise subject matter jurisdiction over Count I of the Plaintiffs' Complaint because a favorable decision by the Court will not redress the Plaintiffs' alleged injuries. The Division of Customs is charged with the enforcement of the Commonwealth's customs laws. 1 CMC § 2553(i); NMIAC § 70-10.1-020 ("The Customs Service Division of the Commonwealth of the Northern Mariana Islands shall . . . intercept illicit imports of narcotics, non-registered weapons, and other contraband at the ports of entry.") Commonwealth law classifies handguns as contraband and prohibits their importation. 6 CMC §§ 2222(e), 2301(a)(3). Any person that unlawfully imports a handgun into the Commonwealth will be punished by imprisonment for not more than five years, a $2000 fine, or both. 6 CMC § 2301(b). The Customs Service will arrest any person and seize any handgun found to be in violation of the 6 CMC § 2301(a)(3). Further, any handgun imported into the Commonwealth will be subject to the forfeiture law of the Commonwealth. 6 CMC § 2303(a). To establish redressability, the Plaintiffs must demonstrate that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Catholic League for Religious & Civil Rights*, 624 F.3d at 1053 (quoting *Lujan*, 504 U.S. at 561). A favorable decision by this Court will not redress Plaintiffs' injuries complained of in Count I of the Complaint because the importation of handguns is and will remain prohibited by a Commonwealth law which the Plaintiffs have not challenged. If the Plaintiffs acquire handguns, then they will be subject to arrest, prosecution, and forfeiture of said handguns under 6 CMC §§ 2301-2303. Therefore, a favorable ruling by this Court will not redress Plaintiffs' alleged injuries. As such, the Court must dismiss Count I for lack of subject matter jurisdiction.

1. <u>EVEN IF PLAINTIFFS HAD CHALLENGED 6 CMC § 2301-2303 THE COURT</u>
<u>WOULD NOT HAVE THE AUTHORITY TO ISSUE AN INJUNCTION</u>
<u>PROHIBITING THE ENFORCEMENT OF THE COMMONWEALTH'S</u>
<u>CONTRABAND LAWS</u>

The Defendant, James C. Deleon Guerrero, does not have a duty to enforce the law prohibiting the importation of contraband codified at 6 CMC §§ 2222(e), 2301-2303. In *Ex parte Young* the Supreme Court held that the Eleventh Amendment does not bar an action against a state officer to restrain unconstitutional conduct on his part under color of state law. *Ex parte Young*, 209 U.S. 123, 157 (1908). "In making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party. *Ex parte Young*, 209 U.S. 123, 157 (1908); *see also Confederated Tribes & Bands of Yakama Indian Nation v. Locke*, 176 F.3d 467, 469 (9th Cir. 1999) ("Because the governor lacks the requisite connection to the activity sought to be enjoined, he serves 'merely ... as a representative of the state,' and the Tribe is 'thereby attempting to make the state a party.'") "This connection must be fairly direct; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit." *Los Angeles Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992). The connection "must be determined under state law depending on whether and under what circumstances a particular defendant has a connection with the challenged state law." *Snoeck v. Brussa*, 153 F.3d 984, 986 (9th Cir. 1998).

Here, Commonwealth law assigns the enforcement of 6 CMC §§ 2222(e), 2301-2306 to the Customs Service. 1 CMC § 2553(i); NMIAC § 70-10.1-020. The Defendant, James C. Deleon Guerrero, is not the chief executive officer of the Customs Service or the Department of

Finance. Ex. 1 ¶ 2-3. Instead, James C. Deleon Guerrero is the Commissioner for the Department of Public Safety. Ex. 1 ¶ 1. As such, James C. Deleon Guerrero does not have the requisite connection with the enforcement of 6 CMC §§ 2222(e), 2301-2306. The Court cannot issue an injunction in the absence of the requisite connection because doing so would make the Commonwealth itself a party, which is not permitted under *Ex parte Young*. Therefore, even if the Plaintiffs had challenged 6 CMC §§ 2301-2306, the Court would be unable to issue an injunction against its enforcement because James C. Deleon Guerrero does not have a direct connection to the challenged provision. Accordingly, this Court does not have the authority to issue an injunction against the unchallenged importation prohibitions contained in 6 CMC §§ 2222(e), 2301-2306. The Court cannot redress the Plaintiffs' alleged injuries because the Court cannot issue an injunction against the enforcement of 6 CMC §§ 2222(e), 2301-2306. Therefore, the Court should dismiss Plaintiffs' Complaint for lack of subject matter jurisdiction.

**B.**   **THE COURT DOES NOT HAVE JURISDICTION OVER PLAINTIFFS' CLAIMS BECAUSE THEY HAVE NOT DEMONSTRATED THAT THEY ARE ENTITLED TO WEAPON IDENTIFICATION CARDS**

The Court cannot grant summary judgment in favor of the Plaintiffs because they have not demonstrated that they are entitled to an identification card issued pursuant to the Weapons Control Act. Any person wishing to acquire an identification card issued pursuant to the Weapons Control Act must prove: (1) that he or she is twenty-one years of age or older; (2) that he or she has successfully completed the Mandatory Firearms Safety Course; (3) that he or she has not been acquitted of a criminal charge by reason of insanity; (5) that he or she has not been adjudicated mentally incompetent; (6) that he or she has not been treated in a mental hospital for mental illness, drug addiction, or alcoholism; (7) that he or she has not been convicted of a crime for which actual or attempted personal injury or death is an element; (8) that he or she has not

been convicted of a crime in connection with which firearms or dangerous devices were used or found in their possession; (9) not convicted of a crime for which the use, possession, or sale of narcotics or dangerous drugs is an element; (10) that he or she has not been suffering from a physical condition or impairment which makes the person unable to use a firearm or dangerous device with proper control; and (11) that he or she may otherwise possess a firearm under federal law. 6 CMC §§ 2204(d); 2204(f)(1)-(6); 2205(a). The moving party must identify the pleadings, depositions, affidavits, or other evidence that it "believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. "The burden of establishing the nonexistence of a 'genuine issue' is on the party moving for summary judgment." *Id.* at 330 (citations omitted). Further, "[i]f a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co.*, 210 F.3d at 1102-03. To establish redressability, Plaintiffs were required to demonstrate that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Catholic League for Religious & Civil Rights*, 624 F.3d at 1053 (quoting *Lujan*, 504 U.S. at 561). Here, the Plaintiffs have not come forth with evidence which would allow this Court to conclude that they are entitled to identification cards issued pursuant to the Weapons Control Act. Without identification cards, the Plaintiffs cannot possess firearms in the Commonwealth. 6 CMC § 2204(a). If the Plaintiffs cannot demonstrate that they are entitled to identification cards, then the Court cannot be assured that a favorable decision will redress the Plaintiff's alleged injuries. As such, the Court must dismiss the Plaintiffs' Complaint for lack of subject matter jurisdiction.

**C.     THE COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION OVER THE CLAIMS BROUGHT BY LI-RONG RADICH BECAUSE SHE IS NOT ENTITLED TO POSSESS FIREARMS IN THE COMMONWEALTH**

Li-Rong Radich cannot legally possess a handgun or any other firearm in the Commonwealth because she is not a citizen or national of the United States. "Only a person who is a permanent resident of the Commonwealth or a United States citizen or a United States national and a bona fide resident of the Commonwealth is eligible for an identification card or for renewal thereof." 6 CMC § 2204(l). Plaintiff Li-Rong Radich is not a citizen or national of the United States. Compl. ¶ 7. Therefore, Li-Rong Radich cannot legally possess a firearm in the Commonwealth unless she can prove that she is a permanent resident of the Commonwealth.

Li-Rong Radich cannot prove that she is a permanent resident of the Commonwealth. Public Law 7-38 added the category of "permanent resident of the Commonwealth" to the allowable firearm applicants in 6 CMC § 2204. Public Law 7-38 was passed on October 11, 1991. In 1991, "permanent resident of the Commonwealth" was defined by Public Law 3-105 § 3(t): "'Permanent resident' means a person granted permanent resident status in the Commonwealth of the Northern Mariana Islands by operation of statute." The immigration status of "permanent resident" and a large portion of the immigration code were repealed by Public Law 17-1 § 5(c), shortly after Congress extended the immigration laws of the United States to the Commonwealth of the Northern Mariana Islands. *See* 48 U.S.C. § 1806. As such, Li-Rong cannot be a permanent resident of the Commonwealth because it is no longer an immigration status recognized by law.

Li-Rong Radich cannot claim that her husband, David Radich, is her sponsor as contemplated by 6 CMC § 2204(l). "Immediate relative" and "sponsor" refer to an immigration status which no longer exists under Commonwealth law. *See* PL 3-105 § 3(m); PL 17-1 § 5(c).

As such, Li-Rong Radich cannot be the "immediate relative" of David Radich because the immigration status of "immediate relative" no longer exists under Commonwealth law.

Li-Rong Radich cannot own a firearm in the Commonwealth. *See* 6 CMC § 2204(l). To establish redressability, Li-Rong Radich must demonstrate that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Catholic League for Religious & Civil Rights*, 624 F.3d at 1053 (quoting *Lujan*, 504 U.S. at 561). Here, the Court cannot redress Li-Rong's alleged injuries because a separate statute, which is not before the Court, prohibits the conduct that the Plaintiff wishes to engage in. *See Nuclear Info. & Res. Serv.*, 457 at 955. Therefore, the Court cannot redress any the Plaintiff's alleged injuries with a favorable ruling.

Accordingly, the Court should dismiss Li-Rong Radich from this case for lack of subject matter jurisdiction over her claims.

**D.      THE COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION OVER PLAINTIFFS' CLAIMS BECAUSE THE PLAINTIFFS HAVE NOT ATTENDED AND COMPLETED THE FIREARM SAFETY CLASS REQUIRED BY LAW**

The Court cannot grant summary judgment in favor of the Plaintiffs because they have not demonstrated that they are entitled to an identification card issued pursuant to the Weapons Control Act. Any person wishing to acquire an identification card pursuant to the Weapons Control Act must attend and successfully complete the Mandatory Firearms Safety Course offered by the Department of Public Safety. 6 CMC § 2204(d). To establish redressability, the Plaintiffs must demonstrate that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Catholic League for Religious & Civil Rights*, 624 at 1053 (quoting *Lujan*, 504 U.S. at 561). Here, the Plaintiffs have not attended the mandatory firearm safety class required by law. Ex. 2 ¶¶ 7-9; Ex. 3 ¶ 9. If the Plaintiffs cannot establish that

they have completed the mandatory firearms class, then the Plaintiffs cannot establish that they are entitled to an identification card issued pursuant to the Weapons Control Act. 6 CMC § 2204(d). If the Plaintiffs cannot acquire Weapon Identification Cards, then as a matter of law, a favorable decision by this Court will not redress the Plaintiffs' alleged injuries because they will still be unable to lawfully possess firearms in the Commonwealth. Accordingly, the Court must dismiss the Plaintiffs' claims for lack of subject matter jurisdiction.

**E.      CONCLUSION**

The Plaintiffs, for a variety of reasons, cannot establish that this Court has jurisdiction over their claims. Subject matter jurisdiction is a threshold matter that must be determined before the Court entertains the merits of the case. If the Court finds that it does not have subject matter jurisdiction, then the Court must immediately dismiss the action. Fed. R. Civ. P. 12(h)(3). Wherefore, the Defendant opposes the Plaintiffs' motion for summary judgment because the Court lacks subject matter jurisdiction over Plaintiffs' Complaint.

The Court should dismiss Plaintiffs' Complaint for lack of subject matter jurisdiction in accordance with Fed. R. Civ. P. 12(h)(3).

**V.      THE HELLER-MCDONALD CONSTRUCTION OF THE SECOND AMENDMENT IS NOT APPLICABLE TO THE COMMONWEALTH BECAUSE IT DIRECTLY CONTRADICTS THE INTENT OF THE FRAMERS OF THE COVENANT**

The Plaintiffs seek to impose upon the Commonwealth an interpretation of the Second Amendment which is directly contrary to the intent of the framers of the Covenant. The Court should hold, that where a subsequent interpretation of a constitutional right is directly contrary to the known understanding of the framers, it may not be enforced against the Commonwealth, based on the fundamental principle that the intent of the framers is paramount when interpreting

the Covenant. Wherefore, the Defendant opposes Plaintiffs' Motion for Summary judgment.

On June 17, 1975, the people of the Northern Marianas Islands voted as a plebiscite to approve the Covenant to Establish a Commonwealth of the Northern Marianas Islands in Political Union with the United States of America ("Covenant"). On March 24, 1976, the Covenant was signed into law by President Gerald Ford. The relations between the Commonwealth and the United States are "governed by th[e] Covenant which, together with those provisions of the Constitution, treaties and laws of the United States applicable to the Northern Mariana Islands, [is] the supreme law of the Northern Mariana Islands." Covenant § 102.

The Plaintiff argues that "the rights protected by the Second Amendment, as described in *Heller* and *McDonald*, apply fully [in] this case." ECF 17 at 5. The only support for Plaintiffs' contention is Covenant § 501(a), which lists the Second Amendment and § 1 of the Fourteenth Amendment among those provisions of the U.S Constitution applicable in the CNMI.

However, since the Covenant was entered into in 1975, prior to the decisions in *Heller* and *McDonald*, the question arises whether the Second and Fourteenth Amendments, as adopted by the Commonwealth in the Covenant, should be construed consistently with those later cases, or whether they should instead be construed as they were commonly understood in 1975, which was contrary to both *Heller* and *McDonald*.

At the time of the Covenant, the Second Amendment was consistently held to protect only a collective, not an individual, right to bear arms. *See*, *e.g.*, *United States v. Johnson*, 497 F.2d 548, 550 (4th Cir. 1974) ("The courts have consistently held that the Second Amendment only confers a collective right of keeping and bearing arms."); *Stevens v. United States*, 440 F.2d 144, 149 (6th Cir. 1971) ("[T]here can be no serious claim to any express constitutional right of an individual to possess a firearm."). This "collective right" view of the Second Amendment,

which was usually held to derive from *United States v. Miller*, 307 U.S. 174 (1939) (*see*, *e.g.*, *Johnson* and *Stevens* (both citing *Miller*)), would not be disavowed by any circuit court prior to *United States v. Emerson*, 270 F.3d 203 (5th Cir. 2001), which re-opened the issue and led ultimately to *Heller. See Silveira v. Lockyer*, 312 F.3d 1052, 1060-66 (9th Cir. 2002) (reviewing history). *See also*, *e.g.*, *United States v. Cruikshank*, 92 U.S. 542, 553 (1875) ("The second amendment declares that [the right to bear arms] shall not be infringed; but this, as has been seen, means no more than that it shall not be infringed by Congress."); *Presser v. Illinois*, 116 U.S. 252, 265 (1886) ("[T]he [second] amendment is a limitation only upon the power of congress and the national government, and not upon that of the state[.]").

Plaintiff may argue that the *Heller-McDonald* constructions must be adopted, based on the principle that a new construction of an existing law does not create new law, but rather corrects the understanding of what the law has always been, and that the Second and Fourteenth Amendments actually meant the same thing in 1975 as they do now, notwithstanding the fact that no one yet knew it.[1]

Even if the validity of this principle is conceded *arguendo*, however, it does not compel the adoption of the *Heller-McDonald* construction for the Commonwealth, because the underlying ideal to which the principle aspires is, in the case of constitutional interpretation, not a "platonic ideal" of the common law, but rather the intent of the framers and ratifiers of the provision being construed. Because the framers and ratifiers of the Covenant were different people from the framers and ratifiers of the Second and Fourteenth Amendments, acting at different places and times, it necessarily follows that they may well have had a different intent.

---

[1] *See*, *e.g.*, *Great Northern Ry. Co. v. Sunburst Oil & Refining Co.*, 287 U.S. 358, 365 (1932) (Cardozo, J.) (noting "the ancient dogma that the law declared by [the] courts had a Platonic or ideal existence before the act of declaration, in which event the discredited declaration will be viewed as if it had never been, and the reconsidered declaration as law from the beginning"); 1 Blackstone, *Commentaries on the Laws of England* (1st ed.) at 70 ("[I]n such cases [i.e., when stating a new rule of law] the subsequent judges do not pretend to make a new law, but to vindicate the old one from misrepresentation."). *See generally Hill v. Equitable Trust Co.*, 851 F.2d 691, 695-96 (3rd Cir. 1988) (discussing concept).

In other words, it may be conceded *arguendo* that *Heller* has accurately discerned and declared the intent of the framers and ratifiers of the Second Amendment in 1791, and that *McDonald* has accurately discerned and declared the intent of the framers and ratifiers of the Fourteenth Amendment in 1868. Be that as it may, *Heller* and *McDonald* do not tell us what the framers and ratifiers of the Covenant intended in 1975, leaving that a question which the court in this case must determine independently.

It is particularly important that the intent of the framers be examined and determined independently, because – unlike the States, which, upon admission, automatically adopted the entire U.S. Constitution – the Commonwealth adopted the U.S. Constitution on a clause-by-clause, sometimes issue-by-issue, basis. *See* Covenant § 501. The framers therefore were required to analyze each provision of the Constitution in terms of its appropriateness for the Commonwealth.[2] And because the framers provided for the application of each provision to the Commonwealth "as if the Northern Mariana Islands were one of the several States," they needed to, and did, specifically consider whether and how each provision applied to the States, to determine whether and how it would apply to the Northern Mariana Islands if included in the Covenant.

The framers' information on this point was to the effect that the Second Amendment did not limit state government action in any way. For example:

---

[2]See, e.g., Ex. 4: [Marianas Political Status Commission] *Position Paper: Future Political Status of Mariana Islands* (May 10, 1973) at 5-6 (¶ D) ("There are some provisions [of the Constitution] which may not be appropriate to the Marianas . . ."); Ex. 5: Unknown Author, *Analysis of Political and Legal Nature of Relationship Between NMI and US* (January 1974) at ¶8 ("The parties are currently studying other provisions of the U.S. Constitution, which should be explicitly considered in the Status Agreement."); Ex. 6: [Marianas Political Status Commission] *Memorandum: Marianas – Applicability of the U.S. Constitution* (1974) (discussion and comparison of the constitutional provisions proposed for the Marianas by both sides); Ex. 7: [Office for Micronesian Status Negotiations] *Memorandum: Marianas Commonwealth, Application of Articles of the U.S. Constitution* (July 8, 1974) (discussion of application of articles of the U.S. Constitution). All documents cited herein reflecting the negotiating history of the Covenant can be found online at the website of the Northern Marianas Humanities Council (http://northernmarianashumanities.org/sec.asp?secID=21), under the heading "The Northern Mariana Islands Original Historical Documents on Development of a U.S. Commonwealth, 1960-1977," or directly at http://nmhcdigitalarchive.org/ histdoc1960_1977/.

This amendment, noting the necessity of a well-regulated militia to the security of a free state, prohibits infringement by Congress of the right to keep and bear arms, but it does not extend this prohibition to state action. Thus . . . the amendment would impose no special obligations on the Mariana[s] government[.]

Ex. 7 at 11 (emphasis added) (citing *Presser*). *See also* Ex. 8 at 2 (listing the Second Amendment among those "[a]mendments wherein applicability to the States under the Fourteenth Amendment does not apply") (emphasis in original) (citing *Presser*). That was the slate upon which they understood themselves to be writing, and they did not choose to disturb it. When the framers of the Covenant agreed to apply the Second and Fourteenth Amendments to the Commonwealth as if it were one of the States, they understood that to mean the Second Amendment did not apply to state action and the Fourteenth Amendment would not make it so.

This understanding is confirmed by the record of the First Northern Mariana Islands Constitutional Convention, in which the people first undertook to implement the Covenant by exercising their new self-government rights.[3] The Convention's briefing paper on the Bill of Rights[4] explicitly states that the right to bear arms applies only against the federal government. *See* Ex. 9: *Briefing Paper No. 7: Bill of Rights* (October 8, 1976) at 50 (discussion under the heading "rights secured by the United States Constitution but not applicable against the Northern Marianas government"); *id.* at n. 123 ("The Supreme Court, has limited the Second Amendment's protection to only infringement by Congress, not by any state regulatory

---

[3] The Plaintiffs may object that evidence of the Convention postdates the Covenant itself, but the *Heller* Court explained that such inquiry into "the public understanding of a legal text in the period after its . . . ratification" is a "critical tool of constitutional interpretation." *Heller*, 554 U.S. at 605. *See also, e.g., Zicherman v. Korean Air Lines Co., Ltd.*, 516 U.S. 217, 226 (1996) (noting that the aids to the interpretation of a treaty include not only the "negotiating and drafting history" but also "the postratification understanding of the contracting parties"). It also bears mention that six delegates to the First NMI Constitutional Convention – Olympio T. Borja, Jose R. Cruz, Herman Q. Guerrero, Benjamin T. Manglona, Francisco T. Palacios, and Oscar C. Rasa – had also been members of the Marianas Political Status Commission which negotiated the Covenant. *See* Willens & Siemer, *An Honorable Accord* (2002) at 38, 218 (listing the members of the Commission).

[4] The briefing papers "were submitted to the delegates before the opening of the Convention" and served to explain the basic legal background against which the delegates were working. Willens & Siemer, *The Constitution of the Northern Mariana Islands: Constitutional Principles and Innovation In a Pacific Setting*, 65 Geo. L.J. 1373, 1585-86 (1977).

scheme.") (citing *Cruikshank*); *id.* at App'x A (listing the Second Amendment right to bear arms as "applicable under Covenant only to federal government.").[5] The significance of this limited application is explained generally as follows:

> With respect to each of the federal rights not made applicable against the Commonwealth government under the Covenant . . . omission will mean that the right is not secured against the Commonwealth government, either by the federal or the Commonwealth Constitution.

*Id.* at 4. Further, the right to bear arms was explained as follows:

> If the Commonwealth Constitution is silent [on the right to bear arms], the people are protected against federal action in this area by the United States Constitution, but the Commonwealth government could prohibit the possession of all firearms if that were deemed appropriate.

*Id.* at 51.

The Convention thus understood silence on the topic of the right to bear arms to leave the legislature free to legislate in that area as it saw fit, and it chose to be silent.[6] This silence was knowing and deliberate. The Convention's initial draft of what is now Article I of the Commonwealth Constitution, dealing with personal rights, included a section based on the Second Amendment, as follows: "Section 7: Availability of a Militia. In order that a militia may be available if necessary in times of emergency, the right of the people to keep and bear arms shall not be infringed." Ex. 10: *Report No. 4, Committee on Personal Rights* at 2 (October 29, 1976). The Committee took a "collective right" view of Section 7: "The Committee's proposed constitutional provision does not guarantee the right of an individual to possess any particular gun." *Id.* at 13. Even so, Delegate Joaquin S. Torres proposed to substitute the following

---

[5] All records of the First Constitutional Convention cited herein are available at the Humanities Council website cited above, under the heading, "The Making of a Constitution. Documents from NMI Constitutional Conventions," or directly at http://nmhcdigitalarchive.org/ConConVer.1.0/.

[6] The briefing paper also adopts a "collective right" understanding of the right to bear arms: "The right to bear arms has been interpreted by the Supreme Court as designed to further the policy of a "well regulated militia." The Amendment, therefore, guarantees the right of a state to maintain a militia, not that of an individual to possess any particular weapon. *Id.* at 50 (*citing* Miller).

language: "<u>Section 7: Gun Control</u>. The legislature shall by law restrict the right of persons living in the Commonwealth to own hand guns. The laws enacted pursuant to this section shall contain no exceptions except those required for the public safety." Ex. 11: *Proposed Amendment No. 37* (November 20, 1976). The Committee clarified that its intention with Section 7 had been only to guarantee the availability of the militia in case of emergency, "eliminat[ing] the confusion" on that point by deleting Section 7 altogether, and recommending the withdrawal of Delegate Torres' proposed amendment on the ground that its subject constituted a "legislative matter." Ex. 12: *Report [on] Article I, Committee [on] Personal Rights* (November 22, 1976) at 2-3. *See also* Ex. 13: *Verbatim Journal, Day 36* at 2 (November 22, 1976). The people of the Northern Mariana Islands, as represented in their Constitutional Convention, thus manifestly understood the regulation of firearms to be within the scope of "internal affairs" subject to self-government under Covenant § 103, and within "all rightful subjects of legislation" under Covenant § 203(c), and not to be restricted by the Second or Fourteenth Amendment as adopted in Covenant § 501(a); and they consciously left the legislature free to deal with it without restriction.

To apply the *Heller-McDonald* construction in the Commonwealth would therefore be to act contrary to the manifest understanding and intent of the framers and ratifiers of the Covenant. Had those decisions been law prior to 1975, the framers would have had the opportunity to carve out exceptions around them in the Covenant, as they did with respect to other problematic constitutional principles, and they might well have done so. In any event, they were satisfied to adopt the Second and Fourteenth Amendments understanding their meaning to be contrary to *Heller-McDonald*, and that decision should be respected and upheld by the Court.

It is of no import whether the framers' understanding of the Second and Fourteenth Amendments was, in any abstract sense, correct. Apparently, in light of *Heller* and *McDonald*, it

was not. The very fact that it was their understanding, however, means that it is correct for purposes of construction of the Covenant.[7]

Plaintiffs may argue that it would be legally erroneous or practically unworkable to strictly limit the application of the U.S. Constitution in the Commonwealth, across the board, to its pre-1975 constructions, and to deny the binding effect of any Supreme Court decisions after that date. That, however, is not what the Defendant is suggesting. The Defendant suggests that this Court should adopt an intermediate rule, whereby post-1975 constructions are generally applicable in the Commonwealth, except under the most exceptional circumstances, analogous to the principles governing whether a new rule announced by a court is to be applied prospectively only.[8]

Wherefore, the Court should hold, that where a subsequent interpretation of a constitutional right is directly contrary to the known understanding of the framers and ratifiers of the Covenant, it may not be enforced against the Commonwealth, based on the fundamental principle that the intent of the framers and ratifiers is paramount when interpreting the Covenant.

---

[7] *See generally, e.g., Brown v. General Services Administration*, 425 U.S. 820, 828 (1976) ("Whether [the] understanding of Congress was in some ultimate sense incorrect is not what is important in determining the legislative intent in amending the 1964 Civil Rights Act to cover federal employees. For the relevant inquiry is not whether Congress correctly perceived the then state of the law, but rather what its perception of the state of the law was.").

[8] The Supreme Court has stated those principles as follows:

> First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed. Second, it has been stressed that we must weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation. Finally, we have weighed the inequity imposed by retroactive application, for where a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the injustice or hardship by a holding of nonretroactivity.

*Chevron Oil Co. v. Huson*, 404 U.S. 97, 107 (1971) (citations and quotations omitted) *disapproved on other grounds by Harper v. Virginia Dep't of Taxation*, 509 U.S. 86 (1993).

Here, Plaintiffs seek to impose upon the Commonwealth an interpretation of the Second Amendment which is directly contrary to the intent of the framers and ratifiers of the Covenant. Accordingly, the Court should deny Plaintiffs' Motion for Summary Judgment.

## VI.    COUNT I

If the Court finds that the Plaintiffs have standing and that the subsequent interpretation of the Second Amendment by the Supreme Court controls, regardless of what the framers intended, then the Defendant opposes Plaintiffs' Motion for Summary Judgment because the *Heller-McDonald* construction of the Second Amendment does not require the constitutional protection of handguns in the Commonwealth.

## A.    THE SECOND AMENDMENT DOES NOT PROTECT THE RIGHT TO POSSESS HANDGUNS IN THE COMMONWEALTH

The Court must utilize a two-step inquiry for determining the constitutionality of a statute challenged under the Second Amendment. *United States v. Chovan*, 735 F.3d 1127, 1136 (9th Cir. 2013) *cert. denied*, 135 S. Ct. 187 (2014). The Court begins by determining whether the challenged statute burdens conduct protected by the Second Amendment. *Id.*; *Peruta v. Cnty. of San Diego*, 742 F.3d 1144, 1150 (9th Cir. 2014). If the Court finds that the challenged statute burdens the Plaintiffs' rights under the Second Amendment, then the Court must apply an appropriate level of scrutiny. *Id*.

### 1.    THE INDIVIDUAL RIGHT TO BEAR ARMS

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." In *Heller*, the United States Supreme Court held "that the Second Amendment codified a pre-existing, individual right to keep and bear arms and that the 'central component of the right' is self-defense." *Peruta*, 742 F.3d at 1149 (quoting *D.C. v. Heller*, 554 U.S. 603, 628-629

(2008)). However, the Court cautioned that "[l]ike most rights, the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Heller*, 554 U.S. at 626. "Rather, it is a right subject to 'traditional restrictions,' which themselves—and this is a critical point—tend 'to show the scope of the right.' *Peruta*, 742 F.3d at 1151 (quoting *McDonald*, 130 S.Ct. at 3056 (Scalia, J., concurring)).

2.      THE SECOND AMENDMENT PROTECTS THE RIGHT TO POSSESS HANDGUNS IN THE STATES BECAUSE OF THEIR WIDESPREAD USAGE BY THE AMERICAN PEOPLE

Handguns do not enjoy Second Amendment protection in the Commonwealth because they have never been possessed or used for self-defense by the people of the Commonwealth. As the Supreme Court explained, handguns are given constitutional protection because of their widespread use by the citizens of the states: in *Heller* "the Court found that this right applies to handguns because they are 'the most preferred firearm in the nation to 'keep' and use for protection of one's home and family,' It thus concluded that citizens must be permitted 'to use [handguns] for the core lawful purpose of self-defense.'" *McDonald*, 561 U.S. at 744-45 (quoting *Heller*, 554 U.S. at 628) (internal citations omitted). If the widespread usage of handguns for self-defense justifies their constitutional protection, then it logically follows that the Supreme Court would have denied constitutional protection to handguns if they had never been used by law abiding citizens for self-protection. As the Defendant will show, handguns have never been used by the law-abiding people of the Commonwealth for the purpose of self-defense.

3.    THE LAW ABIDING CITIZENS OF THE COMMONWEALTH HAVE NEVER USED

HANDGUNS FOR THE PURPOSES OF SELF-DEFENSE

The Supreme Court, in both *Heller* and *McDonald*, made multiple statements about the prevalence of handguns in the states. However, the Court's statements regarding handguns were premised upon data that did not include the Commonwealth. *Heller*, 554 U.S. at 629 (citing *Parker v. D.C.*, 478 F.3d 370, 400 (D.C. Cir. 2007) *aff'd sub nom. D.C. v. Heller* at 570 (citing Gary Kleck & Marc Gertz, *Armed Resistance to Crime: The Prevalence and Nature of Self-Defense with A Gun*, 86 J. Crim. L. & Criminology 150, 160 (1995). The handgun data cited by the Court was obtained by telephonic surveys in the lower forty-eight states over twenty-two years ago. Kleck, *supra* at 160. Therefore, this Court must consult the available handgun data in the Commonwealth to determine whether or not handguns are the preferred weapon of self-defense amongst law abiding citizens.

Handguns have never been permitted in the Commonwealth. The Weapons Control Act prohibits the possession of handguns. 6 CMC § 2222(e). The Weapons Control Act was adopted by the Trust Territory on July 8, 1971. 63 TTC § 551; TT PL 4C-13 § 1. Thereafter, the Commonwealth adopted its Constitution, which provided that the "[l]aws in force in the Northern Mariana Islands on the day preceding the effective date of the Constitution that are consistent with the Constitution and the Covenant shall continue in force until they expire or are amended or repealed." NMI Const. Trans'l Matters § 2. As such, Commonwealth law has always prohibited the possession of handguns and no law abiding Commonwealth citizen has ever possessed a handgun for the purposes of self-defense.

The handgun data compiled by the Defendant proves what is already known: the law abiding citizens of the Commonwealth have never possessed handguns for the purposes of self-defense. In the previous thirty-two years, the citizens of the Commonwealth registered 914

rifles, 301 shotguns, and 0 handguns to be possessed in the Commonwealth. Ex. 2 ¶ 12. Simply put, the data clearly demonstrates that handguns have never been "the most preferred firearm" in the Commonwealth and the people of the Commonwealth have never "considered the handgun to be the quintessential self-defense weapon." On the contrary, the citizens of the Commonwealth have always enjoyed a community free of handguns.

4.      THE SECOND AMENDMENT DOES NOT PROTECT HANDGUNS IN THE COMMONWEALTH

In *McDonald*, the Court clarified that the widespread usage of handguns for self-defense is what justified their constitutional protection in *Heller*: "[e]xplaining that 'the need for defense of self, family, and property is most acute' in the home, *we found that this right applies to handguns because they are 'the most preferred firearm in the nation to "keep" and use for protection of one's home and family . . . .*" *McDonald*, 561 U.S. at 767 (emphasis added) (quoting *Heller* at 628. "Thus, we concluded, citizens must be permitted 'to use [handguns] for the core lawful purpose of self-defense.'" *Id*.

If the Court concluded that handguns are deserving of constitutional protection because they are widely used by United States citizens for the purpose of self-defense, then it logically follows that handguns do not enjoy constitutional protection in the Commonwealth because they have never been used by its citizens for the purpose of self-defense. To say otherwise is to discount and ignore the reasoning used by the Court in both *Heller* and *McDonald*. If the Court had meant that handguns deserve constitutional protection because they are firearms, without any further justification required, then the Court would have stated that handguns are constitutionally protected because the Second Amendment protects all non-military firearms. Instead, the Court reasoned that the widespread use of the handgun for self-defense was the deciding factor for determining its constitutional protection. *Id*. Here, it is undisputed that the law abiding citizens of

the Commonwealth have never possessed handguns for the purposes of self-defense. Extending constitutional protection to handguns in the Commonwealth has absolutely no basis in history, fact, law, or reason. Accordingly, the Defendant urges the Court to adopt the analysis in *Heller* and *McDonald* and hold that handguns are not protected by the Second Amendment in the Commonwealth because they have never been used by the people of the Commonwealth for the purpose of self-defense. Wherefore, the Commonwealth opposes the Plaintiffs' Motion for Summary Judgment as to Count I.

## VII.     CONCLUSION

The Court must begin its analysis by determining whether it has jurisdiction to consider the Plaintiffs' claims. The Court should dismiss Plaintiffs' Complaint for lack of subject matter jurisdiction because the Plaintiffs cannot establish that a favorable ruling by this Court would redress their alleged injuries.

If the Court finds that the Plaintiffs have standing, then the Court should deny summary judgment as to all Counts because the *Heller-McDonald* construction of the Second Amendment directly contradicts the intent of the framers and ratifiers of the Covenant.

If the Court finds that the Plaintiffs have standing, then the Court should deny summary judgment as to Count I because handguns are not constitutionally protected in the Commonwealth.

The Defendant does not specifically address Count III of the Plaintiff's Complaint because it has been withdrawn from his Motion for Summary Judgment.

If the Court finds that Plaintiffs' Motion for Summary Judgment fails as a matter of law, then summary judgment should be entered against the Plaintiffs' pursuant to Fed. R. Civ. P. 56(f)(1).

RESPECTFULLY
SUBMITTED.

OFFICE OF THE ATTORNEY GENERAL

DATED: February 9, 2015

/s/_____
James Zarones
Assistant Attorney General
Office of the Attorney General
Commonwealth of the Northern Mariana Islands
Attorney for Defendant

| | |
|---|---|
| 1 | **CERTIFICATE OF SERVICE** |
| 2 | I hereby certify that the above and foregoing was electronically filed on February 9, |
| 3 | 2015, with service requested to all parties of record. |
| 4 | |
| 5 | /s/_____ |
| 6 | James Zarones, Bar No. T0102 |
| | Assistant Attorney General |
| | Office of the Attorney General |
| 7 | Counsel for Department of Public Safety |
| 8 | Commonwealth of the |
| | Northern Mariana Islands |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

Certificate of Mailing

1 OFFICE OF THE ATTORNEY GENERAL
Edward Manibusan
2 Attorney General
James M. Zarones (T0102)
3 Assistant Attorney General
Hon Juan A. Sablan Mem. Bldg., 2nd Floor
4 Saipan, MP  96950-8907
Tel: (670)-664-9023
5 Fax: (670)-664-2349
e-mail:  jzarones@dps.gov.mp
6 Attorney for Defendant Commonwealth
7

8
**IN THE UNITED STATES DISTRICT COURT**
9 **FOR THE**
**COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS**
10

11 LI-RONG RADICH AND
DAVID RADICH,                                  Civil Action No. 14-0020
12
           Plaintiffs,
13                                              **DEFENDANT'S EXHIBIT LIST IN**
       v.                                       **SUPPORT OF OPPOSITION TO**
14                                              **MOTION FOR SUMMARY**
JAMES C. DELEON GUERRERO, in his                **JUDGMENT**
15 official capacity as Commissioner of the
Department of Public Safety of the
16 Commonwealth of the Northern Mariana
Islands,
17
           Defendant.
18

19        **NOW INTO COURT**, Defendant hereby files his Exhibit List in support of the

20 Defendant's Opposition to Motion for Summary Judgment. The Defendant's exhibits are as

21 follows:

22
| Exhibit 1 | Declaration of James C. Deleon Guerrero |
23 | --- | --- |
| Exhibit 2 | Declaration of Officer Eric David |
24 | | |
| Exhibit A | Summary of Registered Firearms in the Commonwealth |
25 | | |
| Exhibit 3 | Declaration of Officer David Hosono |
26

27

28

| | |
|---|---|
| Exhibit 4 | Marianas Political Status Commission Position Paper: Future Political Status of Mariana Islands (May 10, 1973) |
| Exhibit 5 | Unknown Author, *Analysis of Political and Legal Nature of Relationship Between NMI and US* (January 1974) |
| Exhibit 6 | Marianas Political Status Commission *Memorandum: Marianas – Applicability of the U.S. Constitution* (July 15, 1974) |
| Exhibit 7 | Office for Micronesian Status Negotiations *Memorandum: Marianas Commonwealth, Application of Articles of the U.S. Constitution* (July 8, 1974) |
| Exhibit 8 | *Constitutional Rights Made Applicable to the States under the Fourteenth Amendment* (May 6, 1974) |
| Exhibit 9 | Constitutional Convention *Briefing Paper No. 7: Bill of Rights* (October 8, 1976) |
| Exhibit 10 | Constitutional Convention *Report No. 4, Committee on Personal Rights* (October 29, 1976) |
| Exhibit 11 | Constitutional Convention *Proposed Amendment No. 37* (November 20, 1976) |
| Exhibit 12 | Constitutional Convention *Report [on] Article I, Committee [on] Personal Rights* (November 22, 1976) |
| Exhibit 13 | Constitutional Convention *Verbatim Journal* (Transcript) (November 22, 1976) |
| Exhibit 14 | Declaration of James M. Zarones |

RESPECTFULLY SUBMITTED     OFFICE OF THE ATTORNEY GENERAL

DATED: February 9, 2015          /s/_____
                                 James Zarones
                                 Assistant Attorney General
                                 Office of the Attorney General
                                 Commonwealth of the Northern Mariana Islands
                                 Attorney for Defendant


**CERTIFICATE OF SERVICE**

    I hereby certify that the above and foregoing was electronically filed on February 9, 2015, with service requested to all parties of record.


                                 /s/_____
                                 James Zarones, Bar No. T0102
                                 Assistant Attorney General
                                 Office of the Attorney General
                                 Counsel for Department of Public Safety
                                 Commonwealth of the
                                 Northern Mariana Islands