
July 8, 1974

Memorandum

To: J.M. Wilson, Jr., U.S. Deputy Representative-OMSN

From: Adrian L. de Graffenried, Legal Advisor, OMSN

Subject: Marianas Commonwealth, Application of Articles of the U.S. Constitution

## Summary

The MPSC proposes to extend to the Commonwealth only those provisions of the U.S. Constitution which protect against unwarranted federal intrusion into local affairs. The U.S. proposes to extend those Constitutional provisions which evidence U.S. sovereignty, limit or prohibit local activities that are reserved for the federal government, and promote local autonomy but within the federal-territorial relationship. This diverse approach reflects a basic conceptual conflict on the nature of the relationship of the Commonwealth to the Federal Government: Whether the Commonwealth is created and is functional only under U.S. sovereignty or whether the Commonwealth exists solely by virtue of the Commonwealth Agreement and functions apart from U.S. sovereignty in certain respects. The U.S. proposes the former; the MPSC proposes the latter.

## ISSUES

1. Which of the MPSC proposals are acceptable to the U.S.?

2. Which of the U.S. proposals must the U.S. retain?

## BACKGROUND

During the initial discussions between the U.S. lawyers on the framework for the U.S. Draft Covenant for the Northern Mariana Islands it was noted that because the U.S. holds only certain of the attributes of sovereignty over the Mariana Islands to fulfill its Trusteeship responsibilities it would be essential to evidence full U.S. sovereignty over the Marianas in the status agreement. It was felt that unless the U.S. obtained the full rights of sovereignty from the inception the conceptual and legal issue of "residual sovereignty" would be raised. Under that approach, vestiges

EXHIBIT 7-000002

of inherent sovereignty would vest with the district upon termination of the trusteeship if U.S. sovereignty was not complete. This would have significant impact upon U.S. foreign affairs and defense powers and could erode the whole issue of federal authority over the territories.

The Agreement would also have to make clear that certain of the provisions of the U.S. Constitution would apply. This would serve to evidence federal sovereignty and would avoid the ambiguities evidenced in the Puerto Rican Commonwealth model on the extent of federal plenary power over that territory.

Prior to Puerto Rico and in earlier Supreme Court cases, several distinct classes of U.S. territories were derived: incorporated (where the U.S. Constitution was fully applied such as Hawaii and Alaska); unincorporated (where the U.S. Constitution was only partially applied such as American Samoa, the Virgin Islands, Guam, and Puerto Rico); organized (where the U.S. Congress formulated a local government by express legislation); and, unorganized (where local government was derived from a locally drafted constitution).

The creation of the Puerto Rican Commonwealth blurred these distinctions because the Compact contained significant ambiguities on the extent of federal power over the territory. Puerto Rico, as a consequence, felt that the U.S. Congress had relinquished a portion of its plenary powers; Congress on the other hand felt that Puerto Rico remained subject to the full plenary powers of the Congress. The U.S. Supreme Court confused the issues further by failing to clarify which of the provisions of the U.S. Constitution applied to the unincorporated territories and by applying only certain provisions of the U.S. Constitution to Puerto Rico on a piecemeal basis.

The so-called "Mink Amendment" was added to the U.S. Code provisions governing the federal-territorial relationships to resolve these many ambiguities. This amendment determined which of the provisions of the U.S. Constitution were so fundamental as to apply to all the territories and thus protect the territories against the unwarranted exercise of federal authority. This was the first clear expression of which provisions of the U.S. Constitution were applicable to all the territories.

EXHIBIT 7-000003

The U.S. Draft Covenant contained these basic Constitutional provisions. The U.S. draft also added other provisions to clarify U.S. sovereignty, the supremacy of the federal government, and the extent and limitations of local authority. Sections 401 and 402 of Title IV, of the Draft Commonwealth Covenant contain the applicability of the U.S. Constitution.

The MPSC approached the application of provisions of the U.S. Constitution from another perspective: commensurate with their desire to limit federal authority in the Marianas, the MPSC proposed to apply only those portions of the "Mink Amendment" that enhanced local autonomy. This approach supports the MPSC proposals for local autonomy based on the Commonwealth model as interpreted by Puerto Rico.

Basically, the various provisions of the U.S. Constitution which would apply under the various approaches are as follows:

| Mink Amendments | MPSC | US |
|---|---|---|
| Article I | Article I | Article I |
| Section 9 | Section 9 | Section 9 |
| Clause 2,3 | Clause 2,3 | Clause 2,3,6,8 |
| | | Section 10 |
| Article IV | Article IV | Article IV |
| Section 1 | Section 1 | Section 1 |
| 2, cl.1 | 2, cl.1 | 2, cl.1, 2 |
| | | Article VI, cl.2 |
| | | Article VII |
| Amendments 1-9 | Amendments 1-4 | Amendments 1-4 |
| | | 5, except as it provides a right to indictment by grand jury |

3

06-418055

EXHIBIT 7-000004

| Mink Amendments | MPSC | US |
|---|---|---|
|  |  | 6, 7 except as it provides a right to trial by jury in non-crim cases |
|  |  | 8,9 |
| 13 | 13 | 13 |
| 14, §1, s2 | 14, §1, s2 | 14, §1 sentence §5 |
| 15 | 15 | 15 |
| 19 | 19 | 19 |
|  | 26 |  |

ANALYSIS

As can be seen, the U.S. draft contains only a few variations from the MPSC draft and the Mink Amendment, but these are major differences. Specifically, the U.S. draft adds the following:

1. Article I, Section 9, Clause 6

    This limitation prevents the U.S. Congress from establishing preferences as between ports on account of their location in different states. It was added to the U.S. draft as an initial fall-off position and to indicate U.S. concerns about the MPSC's oft-stated desires regarding control over imports and exports and creating a duty free port status.

2. Article I, Section 9, Clause 8

    This limitation was designed to note that if the Carolinians become U.S. citizens they should not hold titles of nobility or caste rank. American Somoans are differentiated in that they are U.S. nationals. If a local Carolinian is elected to a U.S. public office there might be Constitutional problems if he received titles or gifts from Carolinian royalty.

4

EXHIBIT 7-000005

3. <u>Article I. Section 10</u>

   This section preserves federal authority in foreign affairs, defense and international trade, and interstate commerce by prohibiting the states (and territories) the power to enter into treaties and alliances with foreign powers, to coin money or grant titles of nobility; by prohibiting the States (and territories) from laying duties on foreign goods; and, by requiring the consent of Congress before the State (or territory) can (1) lay duties on ships in a local port, (2) enter into a compact or agreement with another State, or (3) keep local militia.

4. <u>Article IV, Section 2, Clause 2</u>

   This provision relates to extradition of wanted felons and was added to illustrate the concern of the U.S. in the application of laws and to keep the MPSC from psychologically isolating the Marianas from the other territories and the U.S. mainland.

5. <u>Article VI, Clause 2</u>

   This is the federal supremacy clause and is essential to document the extent of federal authority over the Marianas and, coupled with other U.S. draft provisions, to avoid the problem of "residual sovereignty".

6. <u>Article VII</u>

   This relates to ratification of the U.S. Constitution. It is not essential to the Commonwealth relationship.

7. <u>Amendments 5,6,7,8,9</u>

   These are basic to the Bill of Rights and are fundamental protections of all U.S. citizens and nationals against the unwarranted exercise of federal authority.

8. <u>Amendment 14, Section 5</u>

   This enables the U.S. Congress to enforce the provisions of the amendment in the face of local resistance.

EXHIBIT 7-000006

The U.S. draft does not contain Amendment 26 which is contained in the MPSC draft.

RECOMMENDATIONS

    1. The U.S. can accept the MPSC proposals on the application of provisions of the U.S. Constitution.

    2. The U.S. should also insist upon retaining the following additional U.S. Constitutional provisions, as proposed in Section 401 and 402 of the U.S. draft:

    a. Article I, Section 9, Clause 8.

    b. Article I, Section 10.

    c. Article VI, Clause 2.

    d. Amendments 5, 6, 7, 8, and 9.

    e. Amendment 14, Section 5.

    3. The MPSC should make more clear why they desire the application of Amendment 26.