IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| DAVID J. RADICH and LI-RONG RADICH,  )<br>)<br>Plaintiffs,                    )<br>)<br>v.                                          )<br>)<br>JAMES C. DELEON GUERRERO, in his  )<br>official capacity as Commissioner of the  )<br>Department of Public Safety of the         )<br>Commonwealth of Northern Mariana      )<br>Islands, and LARRISA LARSON, in her    )<br>official capacity as Secretary of the         )<br>Department of Finance of the                 )<br>Commonwealth of Northern Mariana      )<br>Islands,                                         )<br>)<br>Defendants.                    ) | Case No. 1:14-CV-20 |

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEY FEES AND EXPENSES

Come now Plaintiffs, DAVID J. RADICH and LI-RONG RADICH, by and through counsel, and respectfully submit their Memorandum of Points and Authorities in Support of their Motion for Attorney's Fees and Costs.

Dated: April 11, 2016

By:      /s/ David G. Sigale
One of the Attorneys for Plaintiffs

| Lead Counsel | Local Civil Rule 83.5(f) Counsel |
|---|---|
| David G. Sigale, Esq. (#6238103 (IL)) | Daniel T. Guidotti, Esq. (#F0473 CNMI)) |
| LAW FIRM OF DAVID G. SIGALE, P.C. | Marianas Pacific Law LLC |
| 799 Roosevelt Road, Suite 207 | 2nd Floor, J.E. Tenorio Building |
| Glen Ellyn, IL 60137 | Middle Road, Gualo Rai |
| Tel:  630.452.4547 | P.O. Box 506057 |
| Fax:  630.596.4445 | Saipan, MP 96950 |
| dsigale@sigalelaw.com | Tel: +1.670.233.0777 |
| Admitted *Pro hac vice* | Fax: +1.670.233.0776 |
|  | dan.guidotti@mpaclaw.com |

*Attorneys for Plaintiffs*

# MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEY FEES AND COSTS

## INTRODUCTION

Plaintiffs challenged, on Second Amendment grounds, the CNMI's prohibition on the possession and importation of handguns and ammunition, as well as the CNMI's ban on the use of firearms for self-defense purposes. Plaintiffs also challenged, on Fourteenth Amendment equal protection grounds, the ban on lawful resident aliens obtaining WICs for self-defense purposes. Having completely prevailed per the Order of Court on March 28, 2016 (Dkt. #60), and pursuant to said Order, Plaintiffs are entitled to recover their attorney fees and costs.

Congress's logic in promulgating fee-shifting provisions like 42 U.S.C. § 1988 is clear. Sentimental idealism aside, the law will not be enforced in our market economy unless someone pays attorneys their market rates to enforce it.

If the cost of private enforcement actions becomes too great, there will be no private enforcement. If our civil rights laws are not to become mere hollow pronouncements which the average citizen cannot enforce, we must maintain the traditionally effective remedy of fee shifting in these cases. S. Rep. 1011, 94th Cong., 2d Sess. 5 (1976). "The purpose of § 1988 is to ensure effective access to the judicial process for persons with civil rights grievances. Accordingly, a prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (citations, internal punctuation omitted).

Where, as here, the relief sought is generally nonmonetary, a substantial fee is particularly important if that statutory purpose is to be fulfilled. It is relatively easy to obtain competent counsel when the litigation is likely to produce a substantial monetary award. It is more difficult to attract counsel where the relief sought is primarily nonmonetary. *Copeland v. Marshall*, 641 F.2d 880, 907 (D.C. Cir. 1980). Nor does available monetary relief fully reflect the value of civil rights litigation. "Unlike most private tort litigants, a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms." *Blanchard v. Bergeron*, 489 U.S. 87, 96 (1989) (citation omitted).

"The initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate. Adjustments to that fee then may be made as necessary in the particular case." *Blum v. Stenson*, 465 U.S. 886, 888 (1984) (citation omitted). "The hourly rate should be based on the lawyers' skill and experience in civil rights or analogous litigation." *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983). "The standard is whether the fees are reasonable in relation to the difficulty, stakes, and outcome of the case." *Gastineau v. Wright*, 592 F.3d 747, 748 (7th Cir. 2010). "The quality of the lawyer's performance in the case should also be considered in placing a value on his or her services." *Ramos*, 713 F.2d at 555. Additionally, "expenses of litigation that are distinct from either statutory costs or the costs of the lawyer's time reflected in hourly billing rates. . . are part of the reasonable attorney's fee

4

allowed by [Section 1988]." *Downes v. Volkswagen of Am.*, 41 F.3d 1132, 1144 (7th Cir. 1994) (citations and footnote omitted).

## ARGUMENT

1.    Plaintiffs Are Prevailing Parties.

"A request for attorney's fees should not result in a second major litigation." *Hensley*, 461 U.S. at 437. Plaintiffs will not belabor this point because, following the entry of summary judgment against the Defendants, and the Court's declaration that Plaintiffs are to be awarded 42 U.S.C. § 1988 fees, Defendants cannot possibly argue that Plaintiffs did anything other than completely prevail.

A successful civil rights plaintiff "cross[es] the 'statutory threshold' for recovering attorney fees and expenses by coming within Section 1988's definition of a 'prevailing party.'" *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 789 (1989). "Prevail" means "to gain the victory." WEBSTER'S UNABRIDGED DICTIONARY 1426 (2d ed. 1979). Attorney fees and expenses are recovered in cases comprising "the stuff of which legal victories are made." *Buckhannon Board & Care Home, Inc. v. West Virginia Dep't of Health & Human Resources*, 532 U.S. 598, 605 (2001) (citations omitted).

"The touchstone of the prevailing party inquiry. . . is 'the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Sole v. Wyner*, 551 U.S. 74, 82 (2007) (quoting *Tex. State Teachers Ass'n.*, 489 U.S. at 792-793). "[T]he phrase 'prevailing party' is not intended to be limited to the victor only after entry of a final judgment following a

full trial on the merits." H. R. Rep. 1558, supra, at 7. "[P]arties may be considered to have prevailed when they vindicate rights through a consent judgment or without formally obtaining relief." S. Rep. No. 1011, *supra*, at 5. Accordingly, "[u]nder our generous formulation of the term, plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Farrar v. Hobby*, 506 U.S. 103, 109 (1992) (citations and internal quotation marks omitted). "[A] 'prevailing party' is one who has been awarded some relief by the court. . ." *Buckhannon*, 532 U.S. at 603.

Without question, this Court through its final summary judgment ordered a change in the parties' legal relationship, which achieved Plaintiffs' litigation goal. As of March 28, 2016, a new constitutional order respecting fundamental, enumerated rights prevailed throughout the CNMI. Defendants are no longer free to enforce a complete prohibition on the possession or importation of handguns, on the use of firearms for self-defense, or the obtaining of WICs by lawful resident aliens — by any measure, a judicially-mandated, material alteration in the legal relationship among the parties.

2.  Counsels' Rates Are Well-Established.

"A reasonable hourly rate should reflect the attorney's market rate, defined as 'the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question.'" *Small v.*

*Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 707 (7th Cir. 2001) (citation omitted).

In determining "reasonable hourly rates," the Supreme Court has repeatedly stressed that "attorney's fees awarded under [Section 1988] are to be based on market rates for services rendered." The attorney's actual billing rate for comparable work is "presumptively appropriate" to use as the market rate. *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1310 (7th Cir. 1996) (citations omitted). When a lawyer establishes a market billing rate, it makes no difference that, in particular cases, the lawyer charges reduced rates to provide assistance for favored or charitable causes. "[L]awyers who donate their services at bargain rates to legal aid organizations may collect under § 1988 the fees they could obtain if the charitable element were removed." *Id.* at 977 (citing *Blum*, *supra*, 465 U.S. 886)). "[T]he lawyer who sacrifices income to assist a favored group of clients" still recovers his or her market rate. *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1149 (7th Cir. 1993). This is what Mr. Sigale has done in this case.

If the court is unable to determine the attorney's true billing rate, however (because he maintains a contingent fee or public interest practice, for example), then the court should look to the next best evidence—the rate charged by lawyers in the community of "reasonably comparable skill, experience, and reputation." *Id.* (quoting *Blum*, 465 U.S. at 895 n.1). Although "usually subsumed within the initial lodestar calculation," the court may adjust the rate based on the twelve "*Hensley* factors." *People Who Care*, 90 F.3d at 1310-11 & n.1. In this context,

7

> [T]he term "community" does not necessarily mean the local market area. In circumstances where the "subject matter of the litigation is one where the attorneys practicing it are highly specialized" the community may be the "community of practitioners" in the national market.

*Kaylor-Trent v. John C. Bonewicz, P.C.*, 916 F. Supp. 2d 878, 884 (C.D.Ill. 2013) (citing *Jeffboat, LLC v. Dir., OWCP*, 553 F.3d 487 (7th Cir. 2009)). An attorney may also establish a market rate "by submitting evidence of fee awards that the applicant has received in similar cases." *Small*, 264 F.3d at 707 (citation omitted). "Once an attorney provides evidence of his billing rate, the burden is upon the defendant to present evidence establishing 'a good reason why a lower rate is essential." *People Who Care*, 90 F.3d at 1313 (citation omitted) (emphasis added). Sigale has also met this standard.

    Courts do not lightly consider the constitutionality of legislative enactments. Civil rights litigation of the sort practiced here is complex, sensitive and specialized work, often handled by experienced litigators. The Second Amendment field itself represents something of a niche.

    "[T]he subject matter of [this] litigation is one where the attorneys practicing it are highly specialized and the market for legal services in [the] area is a national market." *Jeffboat*, 553 F.3d at 491. While any market might host attorneys handling complex federal litigation, neither on Saipan nor in New York City are cases of this type primarily handled by local attorneys. Counsel submit that the quality of their work, and the result achieved, speak for themselves. But they also respectfully submit evidence as to their qualifications and rates.

- David G. Sigale has practiced law for 19 years, and served as co-Plaintiffs' counsel in the landmark U.S. Supreme Court case of *McDonald v. City of Chicago*, 130 S.Ct. 3020 (2010), and was Plaintiffs' counsel in the precedent-setting *Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012) (overturning Illinois's ban on the public carry of firearms) and *Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011) (overturning Chicago's firing range ban). He has successfully litigated Second Amendment cases across the United States. In addition to his constitutional litigation practice, Sigale litigates such other complex issues as antitrust law, employment discrimination and ERISA. In 2013, he was invited to become a member of the National Trial Lawyers: Top 100. He has been named to the Illinois Super Lawyers list every year since 2012. Sigale is also a member of the American Inns of Court, and serves as the Vice-Chair of Programming. He has argued before the Seventh Circuit, and has lectured on the Second Amendment, as well as the Illinois Firearms Concealed Carry Act, for groups such as the Illinois Institute for Continued Legal Education (IICLE) and the Chicago Bar Association. Sigale has also lectured on First Amendment issues.

Though Sigale employs different fee structures for different types of cases, for constitutional litigation his standard rate of $500.00/hour has been agreed upon with governmental entities and approved by the United States District Courts five times (*Moore v. Madigan*, 3:11-CV-3134 (C.D.Ill. 2015); *Winbigler v. Warren County Housing Authority*, 4:12-CV-4032 (C.D.Ill. 2013); *Veasey v. Wilkins*, 5:14-CV-369 (E.D.NC 2015); *Nino de Rivera Lajous v. Sankey*, 4:13-CV-3070 (D.Neb. 2013);

*Jackson v. Eden*, 1:12-CV-421 (D.NM, 2014). He was also awarded the equivalent of his $500.00/rate ($500.00/hour * 20 hours = #10,000.00) in *Pot v. Witt*, 3:13-CV-3102 (W.D.Ark. 2014). *See* attached Orders and Stipulations, attached hereto. His standard hourly rate for commercial and other civil cases is also $500.00/hour.

Sigale earned his J.D. from Georgetown University Law Center in 1996, and a B.A. from Indiana University- Bloomington in 1992.

- Daniel T. Guidotti graduated from Santa Clara University School of Law in June 2009. He was admitted to practice law in California on December 7, 2009, and was admitted to the Commonwealth Bar on October 4, 2013. Since graduating from law school, he worked for the Pro Bono Project Silicon Valley, as a Law Clerk for the CNMI Supreme Court, as an Assistant Public Defender for the CNMI Office of the Public Defender, as Associate Legal Counsel for Bridge Capital, LLC, and most recently, for himself as a solo practitioner.

He has been in private practice since January 2014 and his practice now includes real estate transactions, corporations, wage and hour (FLSA) litigation, EEOC litigation, criminal defense, and Second Amendment civil rights litigation. Although he joined this litigation to serve as local counsel for off-island attorney David G. Sigale, he was involved in almost every aspect of this litigation.

Guidotti's current standard hourly rate for new clients is $175.00 per hour. His rate of $175.00/hour is reasonable and the time expended was necessary to the litigation.

Declarations of David G. Sigale, Daniel T. Guidotti, and Charity R. Hodson are attached in support of this Motion. Also attached is the Justice Department USAO Attorney's Fees Matrix for 2015-2016. Though the Matrix shows billing rates in Washington, D.C., the nature of this case and Sigale's practice make the Matrix applicable to this case. The Matrix shows that Mr. Sigale charges within the range for attorneys of his experience, and Mr. Guidotti's rate is below his listed range. Additionally, attached is the National Law Journal's information regarding 2013 billing rates, within which Mr. Sigale also fits,[1] as well as other related documents which support Sigale's billing rate.

Several *Hensley* factors also support these rates here, including "the novelty and difficulty of the questions; the skill requisite to perform the legal service properly;" "the results obtained; the experience, reputation, and ability of the attorneys;" "and awards in similar cases." *People Who Care*, 90 F.3 d at 13 10 n. 1.

Indeed, were it not for the controversial and unusual issues involved in this case, it is quite possible off-island counsel would not have been needed. For example, one cannot imagine counsel from Illinois being recruited for a personal injury or divorce case. But Plaintiffs required counsel to take on a controversial case and come a long way to do it. As the Ninth Circuit noted in *Guam Soc'y of Obstetricians & Gynecologists v. Ada*, 100 F.3d 691, 698 (9th Cir. 1996): "Moreover, that two of the other plaintiffs hired off-island counsel, on this record, seems to us to

---

[1] Courts often rely on NLJ surveys for this purpose. *See, e.g.*, *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 780 n.58 (S.D.Tex. 2008) (collecting cases).

11

support, rather than contradict, the district court's finding that there was a 'likelihood that no other attorney on island would have accepted the case.'"

Plaintiffs are not seeking a multiplier for prevailing in this case (*See Perdue v. Kenny A.*, 559 U.S. 542 (2010)), but the novelty of the issues, the skill required to properly present the issues to the Court, and counsel's experience and ability in the Second Amendment/civil rights field support counsels' claims for their claimed hourly rates. "[A]n enhancement [of the lodestar] is clearly necessary to a reasonable fee where the district court finds that the case is of the type that attorneys are unwilling to take for fear of ostracization and out of concern for their personal safety. Such a consideration is not ordinarily reflected in the lodestar, and we find that it was clearly not reflected in the lodestar in this particular instance." *Guam Soc'y of Obstetricians*, 100 F.3d at 697. Again, while Plaintiffs' counsel are not seeking enhancements, despite the similarities to this case and *Guam Soc'y of Obstetricians*, they are at least seeking their proven market rates.

3.     The Hours Expended By Counsel Were Reasonably Necessary to the Result.

Counsel's requested rates are especially reasonable in light of their efficiency. The important results in this Court, and the preparation of this Motion, were achieved by only two attorneys in a number of hours that was more than reasonable. Counsel are confident that this amount of time compares very favorably with that typically expended in this field. It would be difficult to examine this case's requirements, counsels' work product, and the result achieved, and surmise that there is anything excessive about counsel's time — which was kept

12

contemporaneously and in sufficient detail to allow an evaluation of their work. Counsel expected that their time entries would be scrutinized. But as Judge Kessler noted,

> When a lawyer writes, for example, that she spent six or eight hours in one day "researching and drafting" a brief dealing exclusively with issues on which her client has ultimately prevailed, there is certainly no need for her to itemize every case she looked up or every paragraph she labored over. Trial courts must recognize how lawyers work and how they notate their time. It must be remembered that the ultimate inquiry is whether the total time claimed is reasonable. *Smith v. District of Columbia*, 466 F.Supp.2d 151, 158 (D.D.C. 2006) (emphasis added).

Plaintiffs reserve the right to supplement their Fee Statements regarding this portion of the litigation, the time expended for which is largely not included in this Motion.

4.     Counsel Are Entitled to Recover Litigation Expenses.

The expenses requested here by counsel were plainly necessary to the conduct of this litigation, *Downes*, 41 F.3d at 1144, and are adequately documented. Prior to agreeing to becoming involved in this case, Mr. Sigale had two meetings (in Chicago), in 2012 and 2013, to discuss the nature of the case, the litigation goals, and the litigation strategy.  Sigale had come to Saipan when the first Summary Judgment Motion was scheduled for hearing in March, 2015, but the hearing was canceled seven hours after he arrived on the island.  By then, of course, the expenses for that trip were already incurred.  Sigale returned for the oral argument on the successful Motion for Summary Judgment in November, 2015.  The other expenses are typical for litigation.

The only note to make is the attached redacted credit card statements. Plaintiffs' counsel incurred a $1167.25 charge to hotels.com when the Hyatt Regency Saipan was booked in March, 2015, and a $252.00 charge directly from the Hyatt upon checkout. The latter sum includes $80.00 ($40.00 each way) for taxis between the airport and the Hyatt (included as transportation costs), plus meals in the Hyatt's restaurants (included as meal costs) and a $20.00/night resort fee.

## CONCLUSION

Wherefore, Plaintiffs respectfully request that their 42 U.S.C. § 1988 fees and costs be awarded pursuant to this Memorandum and Plaintiffs' submissions in support thereof.

Dated: April 11, 2016                    Respectfully submitted,

                                         By:      /s/ David G. Sigale
                                                One of the Attorneys for Plaintiffs

<u>Lead Counsel</u>                                  <u>Local Civil Rule 83.5(f) Counsel</u>
David G. Sigale, Esq. (#6238103 (IL))              Daniel T. Guidotti, Esq. (#F0473 CNMI))
LAW FIRM OF DAVID G. SIGALE, P.C.                  Marianas Pacific Law LLC
799 Roosevelt Road, Suite 207                      2nd Floor, J.E. Tenorio Building
Glen Ellyn, IL 60137                               Middle Road, Gualo Rai
Tel:  630.452.4547                                 P.O. Box 506057
Fax:  630.596.4445                                 Saipan, MP 96950
dsigale@sigalelaw.com                              Tel: +1.670.233.0777
Admitted *Pro hac vice*                            Fax: +1.670.233.0776
                                                   dan.guidotti@mpaclaw.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF ATTORNEY AND NOTICE OF ELECTRONIC FILING

The undersigned certifies that:

    1.    On April 11, 2016, the foregoing document was electronically filed with the District Court Clerk via CM/ECF filing system;

    2.    Pursuant to F.R.Civ.P. 5, the undersigned certifies that, to his best information and belief, there are no non-CM/ECF participants in this matter.

                                              /s/ David G. Sigale  
                                                  David G. Sigale