OFFICE OF THE ATTORNEY GENERAL
Edward Manibusan
Attorney General
James M. Zarones (T0102)
Chief of the Solicitor Division
Hon. Juan A. Sablan Mem. Bldg., 2nd Floor
Saipan, MP 96950-8907
Tel: (670) 237-7500
Fax: (670) 664-2349
E-mail: James_Zarones@cnmioag.org
Attorney for Defendants

# IN THE UNITED STATES DISTRICT COURT
# FOR THE
# NORTHERN MARIANA ISLANDS

| | |
|---|---|
| LI-RONG RADICH and DAVID RADICH,<br><br>    Plaintiffs,<br>v.<br><br>JAMES C. DELEON GUERRERO, in his official capacity as Commissioner of the Department of Public Safety of the Commonwealth of the Northern Mariana Islands, and LARRISA LARSON, in her official capacity as Secretary of the Department of Finance of the Commonwealth of the Northern Mariana Islands,<br><br>    Defendants. | Civil Action No. 14-0020<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEY FEES** |

**NOW INTO COURT**, through undersigned counsel come Defendants (collectively "the Commonwealth"), and hereby oppose Plaintiffs' motion for attorney fees filed on April 11, 2016. The legal basis for the Commonwealth's opposition is more fully set forth in the Memorandum that is filed contemporaneously with this opposition.

RESPECTFULLY SUBMITTED.                OFFICE OF THE ATTORNEY GENERAL

DATED: April 18, 2016                  /s/ James M. Zarones_____
                                       James Zarones, Bar No. T0102
                                       Chief of the Solicitor Division
                                       Office of the Attorney General
                                       Commonwealth of the Northern Mariana Islands
                                       Attorney for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing was electronically filed on April 18, 2016, with service requested to all parties of record.

/s/ James M. Zarones_____
James Zarones, Bar No. T0102
Chief of the Solicitor Division
Office of the Attorney General
Commonwealth of the Northern Mariana Islands
Attorney for Defendants

OFFICE OF THE ATTORNEY GENERAL
Edward Manibusan
Attorney General
James M. Zarones (T0102)
Chief of the Solicitor Division
Hon Juan A. Sablan Mem. Bldg., 2nd Floor
Saipan, MP 96950-8907
Tel: (670) 237-7500
Fax: (670) 664-2349
E-mail: James_Zarones@cnmioag.org
Attorney for Defendants

**IN THE UNITED STATES DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS**

| | |
|---|---|
| LI-RONG RADICH and DAVID RADICH, <br><br> Plaintiffs, <br> v. <br><br> JAMES C. DELEON GUERRERO, in his official capacity as Commissioner of the Department of Public Safety of the Commonwealth of the Northern Mariana Islands, and LARRISA LARSON, in her official capacity as Secretary of the Department of Finance of the Commonwealth of the Northern Mariana Islands, <br><br> Defendants. | Civil Action No. 14-0020 <br><br> **MEMORANDUM IN SUPPORT OF OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEY FEES** |

## I. INTRODUCTION

On March 28, 2016, the Court granted Plaintiffs' motion for summary judgment and ordered Plaintiffs to submit their costs and attorney fees. Plaintiffs filed their motion for attorney fees on April 11, 2016.

The Commonwealth opposes Plaintiffs' request for attorney fees for two reasons. First, Plaintiffs are requesting fees that could not reasonably be billed to a private client. Second, Plaintiffs failed to provide the Court with evidence of the prevailing market rates in the Northern Mariana Islands.

## II. THE LAW ORDINARILY REQUIRES THE COURT TO AWARD ATTORNEY FEES TO THE PREVAILING PARTY.

"42 U.S.C. § 1988(b) authorizes district courts to award the 'prevailing party,' in any suit under 42 U.S.C. § 1983, a "reasonable attorney's fee." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). To determine the amount of a reasonable fee under § 1988, district courts typically proceed in two steps. First, courts generally "apply ... the 'lodestar' method to determine what constitutes a reasonable attorney's fee." *Id*. (quoting *Costa v. Comm'r of Soc. Security Admin.*, 690 F.3d 1132, 1135 (9th Cir.2012) (citations omitted)). "Second, '[t]he district court may then adjust [the lodestar] upward or downward based on a variety of factors.'" *Id*. at 1202 (quoting *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008)). "The lodestar method multiplies the number of hours 'the prevailing party reasonably expended on the litigation by a reasonable hourly rate.'" *Ballen v. City of Redmond*, 466 F.3d 736, 746 (9th Cir. 2006) (quoting *McGrath v. County of Nevada*, 67 F.3d 248, 252 (9th Cir.1995)). "The product of this computation—the 'lodestar figure'—is a 'presumptively reasonable' fee under 42 U.S.C. § 1988. *Gonzalez*, 729 F.3d at 1202. Here, Plaintiffs' attorneys are not requesting an upward adjustment. Therefore, the Court need only determine what constitutes a reasonable attorney's fee.

**A. THE PLAINTIFFS' ATTORNEYS ARE REQUESTING FEES FOR CLERICAL WORK AND WORK THAT SHOULD HAVE BEEN PERFORMED BY PARALEGALS**

The attorneys for the Plaintiffs are inappropriately seeking reimbursement for work that should have been performed by secretaries and paralegals. Wherefore, the Commonwealth objects to any fee based on clerical or paralegal tasks performed by Attorneys David Sagle and Daniel Guidotti.

In *Missouri v. Jenkins*, 491 U.S. 274, 109 (1989), the Supreme Court held that a "'reasonable attorney's fee' provided for by statute should compensate the work of paralegals, as well as that of attorneys." *Trustees of Const. Indus. & Laborers Health & Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1256 (9th Cir. 2006). "The Ninth Circuit has extended compensation to all those 'whose labor contributes to work product for which an attorney bills her client.'" *Robinson v. Chand*, No. CIVS051080DFLDAD, 2007 WL 1300450, at *2 (E.D. Cal. May 2, 2007) (quoting *Trustees of the Constr. Indus. & Laborers Health & Welfare Trust*, 460 F.3d 1253, 1256-57 (9th Cir.2006)). "Such work is only compensable, however, 'if it is customary to bill such work separately.'" *Id*. "For fees to be reasonable, paralegal work should be billed at an appropriate rate, regardless of the status of the person actually undertaking the work." *Id*.

Wherefore, the Commonwealth objects to the following billable hours as work that should have been performed by paralegals or secretaries:

| Work Performed by David G. Sigale | Objection | Page[1] |
|---|---|---|
| 9/2/14: (0.3) E-mails with local counsel re: pro hac vice application, procedure.<br>9/3/14: (0.4) E-mails with local counsel, District Court Clerk re: CNMI pro hac vice procedure, application.<br>9/5/14: (0.6) Complete pro hac vice Application (0.4); Draft correspondence to Clerk of Court re: pro hace vice Application (0.2).<br>9/8/14: (0.1) E-mail to District Court Clerk re: pro hac vice application. | It was unreasonable for an attorney billing $500 an hour to personally handle every aspect of the relatively straightforward process of obtaining admission to the Court. This is a task that does not require the advanced knowledge of an experienced Second Amendment litigator. | Page 2, 3, |
| 9/4/14: (0.7) Draft Civil Cover Sheet (0.3); Draft Summons (0.2); E-mails with local counsel re: filing of all documents (0.2). | It was unreasonable for an attorney billing $500 an hour to spend .7 hours drafting the Civil Cover Sheet. This is not an activity that requires the advanced knowledge of an experienced Second Amendment litigator. | Page 3 |
| 10/9/14: (0.1) Complete ECF registration. | This is not an activity that requires the advanced knowledge of an experienced Second Amendment litigator. The Commonwealth should not be billed $500 an hour for Attorney Sigale to complete his ECF registration. | Page 3 |
| 10/13/14: (0.2) Draft Appearance. | It was unreasonable for an attorney billing $500 an hour to spend time drafting an entry of appearance. This is a relatively simple task that should have been performed by a paralegal. | Page 3 |
| 1/19/15: Draft List of Exhibits for Motion for Summary Judgment (0.3) | This task could have been performed by a secretary. No legal expertise is required to draft a list of exhibits. | Page 5 |
| 3/21/15: E-mails with co-counsel re: drafting of Amended Complaint; service of process on Defendant Larson (0.4)<br><br>3/25/15: (0.1) E-mail from co-counsel re: Summons to Defendant Larson. | The Commonwealth objects to the portion of this fee attributable to a discussion regarding service of process. The rules for serving process are not complex and should have been handled by a paralegal. | Page 7 |

---

[1] All page citations in this table are to ECF 62-1.

| | | |
|---|---|---|
| 3/26/15 (0.4) Draft Summons for Defendant Larson (0.1); Legal research re: service of Summons on Defendant Larson (0.2); E-mail with co-counsel re: service of Summonses (0.1). E-mail with co-counsel re: service of Summons on new Defendant Larson (0.1). | The drafting and service of a summons does not require a high level of legal expertise. This work should have been handled by a paralegal. | Page 7 |

| Work Performed by Daniel Guidotti | Objection | Page[2] |
|---|---|---|
| 9/2/14: Review pro hac vice rules of NMI District Court (NMIDC). (.2)<br><br>9/4/14: Phone call to NMIDC to verify pro hac vice admissions procedure. (.1); Review and respond to emails from D. Sigale re: pro hac vice procedure. (.2)<br><br>9/29/14: Phone call to NMIDC re: status of D. Sigale pro hac vice application. (.1)<br><br>10/2/14: Phone call to NMIDC re: status of D. Sigale pro hac vice application (.2); Email D. Sigale re: status update regarding pro hac vice application. (.1)<br><br>10/3/14: Email NMIDC re: status of D. Sigale pro hac vice application. (.3)<br><br>10/8/14: Review email from NMIDC re: D. Sigale pro hac vice application. (.1); Review email from D. Sigale re: pro hac vice application. (.1); Respond to email from D. Sigale re: pro hac vice application. (.1); Review client file to resolve pro hac vice application issue. (.2); Email D. Sigale re: resolution to pro hac vice issue. (.2);<br><br>10/10/14: Review filed pro hac vice application and supporting documents. (.1); Phone call to NMIDC re: oath required for pro hac vice. (.2); Email D. Sigale re: NMIDC response re: pro hac vice oath. (.1); | This is duplicative of work declared by David Sigale. In addition, the telephone calls and emails being sent in regards to the status of the application could have been sent by a secretary. | Page 1, 2 |

---

[2] All page citations in this table are to ECF 62-11.

| | | |
|---|---|---|
| 9/5/14. Review summons, complaint, and civil case sheet. (.1) Email D. Sigale re: filing summons, complaint, and civil case sheet. (.2).<br>3/21/15: Review Commonwealth service statutes. (.2).<br>3/22/15: Respond to D. Sigale email re: service of the first amended complaint (.2).<br>3/27/15: Email D. Sigale re: service of summons. (.1). | This is duplicative of work declared by David Sigale, who wishes to bill $500 per hour for his work drafting a summons and complaint. This work should have been performed by a paralegal and should not have been reviewed by two attorneys attempting to bill their full hourly rates. | Page 1, 4, 5 |
| 10/27/14: Phone call to NMIDC re: telephonic appearance for D. Sigale. (.1)<br><br>10/28/14: Phone call to NMIDC re: D. Sigale telephonic appearance. | A secretary is perfect capable of making phone calls to the Court Clerk. This is not a matter that requires legal expertise. | Page 2 |
| 4/13/15: Call NMIDC re: procedural requirements for filing the second amended complaint. (.2); Review and respond to D. Sigale email re: filing the second amended complaint. (.2) | A secretary is perfectly capable of making phone calls to the Court Clerk. This is not a matter that requires legal expertise. | Page 5 |

**B.  PLAINTIFFS ARE REQUESTING FEES THAT COULD NOT REASONABLY BE BILLED TO A PRIVATE CLIENT.**

Under the lodestar method of calculating reasonable attorney fees, the "district court must start by determining how many hours were reasonably expended on the litigation, and then multiply those hours by the prevailing local rate for an attorney of the skill required to perform the litigation." *Moreno*, 534 F.3d at 1111 (citation omitted). "The number of hours to be compensated is calculated by considering whether, in light of the circumstances, the time could reasonably have been billed to a private client." *Id*. "Of course, in some cases, the prevailing party may submit billing records which include hours that could not reasonably be billed to a private client and, therefore, are not properly included in a § 1988 fee award." *Gonzalez*, 729 F.3d at 1203. "Time is reasonably expended on the litigation when it is "useful and of a type ordinarily necessary to secure the final result obtained from the litigation." *Santos v. Camacho*, Civ. Nos. 04-06, 04-38, 04-49, 2008 WL 8602098 at 35 (D. Guam Apr. 23, 2008) (quoting *Webb v. Bd. of Educ. of Dyer Cnty.*, 471 U.S. 234, 242 (1985)). The district court has broad discretion

to determine whether hours are reasonably billed. *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992). Reductions in billed hours are expressly permitted when an attorney performs excessive, redundant, or unnecessarily duplicative work. *Id.*; *Moreno*, 534 F.3d at 1112.

**1. The Commonwealth should not be required to pay attorney fees for conversations with third parties.**

On November 18, 2012, Attorney David G. Sigale traveled 2.4 hours to meet with an individual named Gray Peterson. (ECF 62-1 p. 1). The meeting lasted an hour. *Id*. Again, on November 24, 2013, Sigale traveled 2.5 hours to meet Gray Peterson. *Id*. at 2. That meeting also lasted an hour. *Id*. At the first conference, Sigale discussed logistics, the plaintiffs generally, and the possibility of bringing a lawsuit. *Id*. at 1. At the second conference, Sigale again discussed the plaintiffs generally and the necessary steps for bringing a possible lawsuit. *Id*. at 2. Attorney Daniel Guidotti logged 1.4 hours communicating with Gray Peterson. (ECF 62-11 pp. 1, 3, 4).

Gray Peterson is not an attorney providing representation to the plaintiffs in this case. Nor do any of the records indicate that Gray Peterson had any relevance to this case. The billing summary does not provide any information that would justify compensating the attorneys in this case for their conversations with this third-party. The Commonwealth objects to any attorney fees for contacts by Attorney Sigale or Attorney Guidotti with Gray Peterson.

Furthermore, the records do not explain why Attorney Sigale felt the need to personally visit Gray Peterson at a hotel as opposed to making use of a telephone. The Commonwealth objects to any travel-related fees and any hotel related fees in regards to Attorney Sigale's visits with Gray Peterson. (ECF 62-1 p. 11).

**2. The Commonwealth should not be required to pay for the duplicative effort of researching and drafting four separate complaints in this case. Instead, Attorney Sigale and Attorney Guidotti should have conducted the research necessary to competently draft the original complaint.**

The Commonwealth should not be required to compensate Attorney Sigale and Attorney

Guidotti for the time spent drafting four separate complaints in this case. If the original complaint had been appropriately researched and competently drafted, then Attorney Sigale and Attorney Guidotti would not have been required to draft three additional complaints. A client would never be expected to pay an attorney to repeatedly draft the same complaint; it is equally inappropriate to ask the taxpayers of the Commonwealth to fund the needless quadrupling of effort that took place in this matter.

Attorney Sigale completed the first draft of the original complaint in 3.5 hours. (ECF 62-1 p. 2). Attorney Sigale required an additional .9 hours to make revisions to the complaint. *Id*. Attorney Guidotti spent .8 hours reviewing, revising, and emailing co-counsel in regards to the original complaint. (ECF 61-11 p. 1). The first complaint failed because Attorney Sigale and Attorney Guidotti failed to challenge the Commonwealth's customs laws. Moreover, they (1) failed to join the Secretary of Finance, who was a necessary party; (2) failed to challenge the ban on ammunition; (3) failed to prove that their clients were eligible to receive firearm identification cards; (4) failed to challenge the restriction of firearm possession to citizens and nationals; (5) failed to instruct their clients to take and pass the mandatory firearm safety class; (6) and failed to produce a single fact to support their contentions regarding the federal firearm dealers' license. (ECF 20; 26 at 5). The Court dismissed the defective complaint without requiring a hearing. (ECF 26).

On March 21, 2015, Plaintiffs filed their second complaint. The second complaint was nearly identical to the first complaint, except for an additional cause of action and eight additional paragraphs added prior to the first cause of action. (ECF 27). Attorney Sigale spent 3.1 hours drafting and corresponding with Attorney Guidotti with regard to the second complaint. (ECF 61-1 pp. 6, 7). Attorney Guidotti spent 2 hours drafting and corresponding with Attorney Sigale in regards to the second complaint. (ECF 61-11 pp. 5, 6). On April 22, 2015, Plaintiffs

filed their third complaint. The third complaint was nearly identical to the second complaint, except for references to ammunition and the addition of an equal protection cause of action. (ECF 34). Nonetheless, Attorney Sigale spent 4.8 hours revising the third complaint and communicating with Attorney Guidotti. (ECF 61-1 pp. 7-8). Attorney Guidotti spent 2.7 hours reviewing the third complaint, communicating with Attorney Sigale, and addressing issues of service of process. (ECF 61-11 pp. 5-6). On May 21, 2015, the Commonwealth filed a motion to dismiss the third complaint. (ECF 37). The Plaintiffs did not oppose the Commonwealth's motion to dismiss, presumably because the third complaint, like the previous complaints, contained a frivolous cause of action. Instead, Defendants filed an untimely motion for leave to file a fourth complaint. (ECF 41). The Court granted Defendants motion and they were permitted to file a fourth complaint. (ECF 43). Attorney Sigale spent 4.8 hours responding to the motion to dismiss, drafting related documents, and drafting the fourth complaint. (ECF 61-1 pp. 8-9). This complaint ultimately led to the disposition of the case.

Put simply, an attorney would not bill a client for drafting four complaints when one competently researched and drafted complaint would have been sufficient. Therefore, the Commonwealth objects to the fees incurred by Plaintiffs' counsel for the second, third, and fourth complaints, as a private client would never be asked to pay for repeated attempts to complete the same relatively simple task.

**3.    Attorney Sigale should not receive $10,500 for his travel to the Commonwealth because the original complaint and motion for summary judgment were defective.**

Plaintiffs' first motion for summary judgment was defective for a variety of reasons. As such, Attorney Sigale should not receive any fees for his travel to the Commonwealth to attend a hearing that was unnecessary and, in fact, did not occur.

Plaintiffs' first motion for summary judgment was frivolous because Plaintiffs' attorneys (1) failed to join the Secretary of Finance, who was a necessary party; (2) failed to challenge the

ban on ammunition; (3) failed to prove that their clients were eligible to receive firearm identification cards; (4) failed to challenge restriction of firearm possession to citizens and nationals; (5) failed to instruct their clients to take and pass the mandatory firearm safety class or otherwise failed to offer evidence that their clients were not able to take the class; (6) and failed to produce a single fact to support their contentions regarding the federal firearm dealers' license. (ECF 20; 26). But most importantly, Plaintiffs did not challenge the Commonwealth's ban on the importation of handguns. Their failure to do so deprived the Court of subject matter jurisdiction because it could not redress their injuries. (ECF 26 p. 4). Plaintiff's obligation to establish the Court's jurisdiction is a well-settled requirement to proceed with a lawsuit. And a motion for summary judgment cannot succeed where the Court clearly lacks jurisdiction. Accordingly, the Commonwealth's taxpayers should not have to compensate Attorney Sigale for filing the motion.

Given the frivolous nature of Plaintiffs' first motion for summary judgment, it would be inappropriate to allow Attorney Sigale to earn $10,500 in compensation for his travel time. (ECF 62-1 p. 6). Nor would it be appropriate for the Commonwealth to bare the expenses incurred by the Sigale as a result of the motion for summary judgment. Wherefore, the Commonwealth objects to paying for the travel time billed by Attorney Sigale regarding his travel to the Commonwealth to argue in favor of Plaintiffs' motion for summary judgment. For the same reasons, the Commonwealth further objects paying for to Attorney Sigale's airline ticket, meals on island, and costs of his other transportation.

**4. The memorandum in support of attorney fees is a cut-and-paste document that fails to provide the Court with the information necessary to establish the reasonable hourly rate to be applied.**

Sigale represents that he spent 5 hours researching and drafting a memorandum in support of his fee request. (ECF 62-1 p. 11). However, the memorandum is nothing more than a

copy-and-paste of a memorandum he filed in a previous lawsuit. (c.f. ECF 62; Exhibit A). The memorandum in this case differs only in that was altered to include several new paragraphs and a citation to a case from the Ninth Circuit Court of Appeals. Otherwise, it is similar in all respects to the filing attached to this opposition as Exhibit A.

The boilerplate nature of the memorandum is apparent to any attorney who examines it. The memorandum includes meaningless comments about efficiency, but it lacks an explanation for why it was necessary to file four complaints in this case. Furthermore, almost every citation in the memorandum is to precedent from outside the Ninth Circuit. As discussed below, the memorandum wholly fails to establish the prevailing market rate for attorney fees in the Northern Mariana Islands. Thus, it appears that the time spent "drafting" the memorandum was either inflated or was excessive. Given the incredible fees being requested by Attorney Sigale, the quality of the memorandum is simply unacceptable. A private client would not be asked to pay $2,500 for such a document.

Wherefore, the Commonwealth requests that the Court disallow any costs related to the preparation of Attorney Sigale's boilerplate fee memorandum.

**C. THE COURT CANNOT DETERMINE THE REASONABLE HOURLY RATE TO CALCULATE THE LODESTAR AMOUNT BECAUSE ATTORNEY SIGALE AND ATTORNEY GUIDOTTI FAILED TO PROVIDE EVIDENCE OF THE PREVAILING MARKET RATE IN THE NORTHERN MARIANA ISLANDS.**

It is reversible error for the Court to determine a reasonable hourly rate in the absence of evidence establishing the prevailing market rate in the Northern Mariana Islands. Here, the Court must deny the fee request submitted by Attorney Sigale and Attorney Guidotti because they did not submit any evidence of the prevailing market rate in the Northern Mariana Islands.

"In addition to computing a reasonable number of hours, the district court must determine a reasonable hourly rate to use for attorneys and paralegals in computing the lodestar amount." *Id.* at 1205 (citing *Ballen*, 466 F.3d at 746). Importantly, "it is the 'prevailing market rates in the

relevant community' [that] set the reasonable hourly rate for purposes of computing the lodestar amount." *Id*. (citations omitted). "Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." *Id*. (quoting *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010)). "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). "In making the award, the district court must strike a balance between granting sufficient fees to attract qualified counsel to civil rights cases and avoiding a windfall to counsel. The way to do so is to compensate counsel at the prevailing rate in the community for similar work; no more, no less." *Moreno*, 534 F.3d at 1111 (citations omitted). Recognizing this requirement, the Ninth Circuit held that a fee award must be vacated where the district court failed to compute the lodestar figure "using the market rate prevailing in the district where the court was located for attorneys and paralegals of similar 'experience, skill, and reputation' to members of Plaintiffs' legal team working on similarly complex matters." *Gonzalez*, 729 F.3d at 1206.

Thus, as the fee applicants, Attorney Sigale and Attorney Guidotti have the burden of producing evidence that they are requesting a reasonable hourly rate as determined by the prevailing market rates in the Commonwealth. However, they did not submit any evidence of the prevailing market rate in the Commonwealth for attorneys of similar experience, skill, and reputation. Nor did they demonstrate that local attorneys were unavailable to handle the litigation in this case. Instead, they simply stated, without citation to the record: "[w]hile any market might host attorneys handling complex federal litigation, neither on Saipan nor in New York City are

cases of this type primarily handled by local attorneys." (ECF 62 p. 8). Without citation to the record, counsel's statement is completely conclusory.

Given the deficiencies in the filings by Attorney Sigale and Attorney Guidotti, the Court cannot determine if their fee request is reasonable because they have provided no evidence of the prevailing market rate in the Commonwealth. Wherefore, the Commonwealth objects to the hourly rate requested by both Attorney Sigale and Attorney Guidotti. The Court should deny opposing counsels' motion for attorney fees because they have failed produce evidence of the prevailing market rate for attorney fees in the Commonwealth.

**III. CONCLUSION**

For the reasons described above, the Court should disallow costs and fees incurred by attorneys performing clerical work or work that should have been performed by a paralegal.

The Court should disallow fees and costs related to the third-party Gray Peterson. The Court should also disallow costs and fees related to the drafting, review, and service of four separate complaints in this matter. If this case had been properly researched to begin with, then one complaint would have been sufficient. Opposing counsel should not receive a windfall as a result of his failure to adequately research the Plaintiffs' complaint prior to filing it with this Court.

The Court should further disallow costs incurred by Attorney Sigale regarding the first motion for summary judgment. Because this motion for summary judgment was extraordinarily deficient, it should not have been filed. When confronted with its infirmity, Attorney Sigale should have withdrawn the motion and sought an amendment to the complaint. The Commonwealth should not be forced to pay a large sum of money for his refusal to do so.

The Court should disallow the costs associated with the memorandum in support of Plaintiffs' attorney fees. Put simply, the memorandum is copied from a memorandum in another

Memorandum in Support of Defendants' Opposition
Page 12 of 13

cases of this type primarily handled by local attorneys." (ECF 62 p. 8). Without citation to the record, counsel's statement is completely conclusory.

Given the deficiencies in the filings by Attorney Sigale and Attorney Guidotti, the Court cannot determine if their fee request is reasonable because they have provided no evidence of the prevailing market rate in the Commonwealth. Wherefore, the Commonwealth objects to the hourly rate requested by both Attorney Sigale and Attorney Guidotti. The Court should deny opposing counsels' motion for attorney fees because they have failed produce evidence of the prevailing market rate for attorney fees in the Commonwealth.

**III.  CONCLUSION**

For the reasons described above, the Court should disallow costs and fees incurred by attorneys performing clerical work or work that should have been performed by a paralegal.

The Court should disallow fees and costs related to the third-party Gray Peterson. The Court should also disallow costs and fees related to the drafting, review, and service of four separate complaints in this matter. If this case had been properly researched to begin with, then one complaint would have been sufficient. Opposing counsel should not receive a windfall as a result of his failure to adequately research the Plaintiffs' complaint prior to filing it with this Court.

The Court should further disallow costs incurred by Attorney Sigale regarding the first motion for summary judgment. Because this motion for summary judgment was extraordinarily deficient, it should not have been filed. When confronted with its infirmity, Attorney Sigale should have withdrawn the motion and sought an amendment to the complaint. The Commonwealth should not be forced to pay a large sum of money for his refusal to do so.

The Court should disallow the costs associated with the memorandum in support of Plaintiffs' attorney fees. Put simply, the memorandum is copied from a memorandum in another

case, it misrepresents the law of the Ninth Circuit, and its dearth of substance renders it legally defective. A private client would not be asked to pay $2,500 for such a grossly deficient document.

Finally, the Court cannot properly review the fee request in this matter because Attorney Sigale and Attorney Guidotti failed to provide evidence of the prevailing market rate for attorney fees in the Commonwealth. Wherefore, opposing counsels' request for attorney fees must be denied.

| | |
|---|---|
| RESPECTFULLY SUBMITTED. | OFFICE OF THE ATTORNEY GENERAL |
| DATED: April 18, 2016 | /s/ James M. Zarones_____<br>James Zarones<br>Chief of the Solicitor Division<br>Office of the Attorney General<br>Commonwealth of the Northern Mariana Islands<br>Attorney for Defendants |

### CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing was electronically filed on April 18, 2016, with service requested to all parties of record.

/s/ James M. Zarones_____
James Zarones, Bar No. T0102
Chief of the Solicitor Division
Office of the Attorney General
Commonwealth of the Northern Mariana Islands
Attorney for Defendants