### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| DAVID J. RADICH and LI-RONG RADICH,<br><br>            Plaintiffs,<br><br>        v.<br><br>ROBERT GUERRERO, in his official capacity as Commissioner of the Department of Public Safety of the Commonwealth of the Northern Mariana Islands, and LARISSA LARSON, in her official capacity as Secretary of the Department of Finance of the Commonwealth of the Northern Mariana Islands,<br><br>            Defendants. | Case 1:14-CV-00020<br><br><br><br>**DECISION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR ATTORNEY FEES AND EXPENSES** |

## I.       INTRODUCTION

Pursuant to 42 U.S.C. § 1988, Plaintiffs David J. Radich and Li-Rong Radich have filed a Motion for Attorney Fees and Expenses (ECF No. 61), following this Court's grant of summary judgment in their favor on Second Amendment and Fourteenth Amendment claims under 42 U.S.C. § 1983 (ECF No. 60). The request is for $80,325.00 in fees for attorney David G. Sigale, $15,347.50 in fees for attorney Daniel T. Guidotti, and $8,241.33 in costs. Plaintiffs have filed a memorandum in support (ECF No. 62) and the following exhibits: Sigale's Statement of Time and Expense (ECF No. 62-1), travel and meal receipts from a trip to Saipan in November 2015 (ECF Nos. 63 and 64), orders and stipulations for fees and expenses in civil rights cases handled by Sigale in other jurisdictions

1

(ECF No. 62-2 through 62-7), the USAO Attorney's Fees Matrix, 2015–2016 (ECF No. 62-8), a billing survey, dated January 13, 2014, by the National Law Journal (ECF No. 62-9), Guidotti's billing statement (ECF No. 62-11), and declarations of Sigale (ECF No. 62-10), Guidotti (ECF No. 62-12), and Charity R. Hodson (ECF No. 62-13). Defendants have filed an Opposition (ECF No. 65), along with a copy of the memorandum on fees and expenses that Sigale filed in a case in the District of New Mexico (ECF No. 65-1). The motion came on for a hearing on March 10, 2016, after which the court took it under advisement. Having carefully considered all the papers and the oral arguments of counsel, the Court grants the motion, but not for the full amount requested.

## II.     DISCUSSION

a.     *Legal Authority*

In a § 1983 case, the court has discretion to "allow the prevailing party . . . a reasonable attorney's fee as a part of the costs[.]" 42 U.S.C. § 1988(b). It is undisputed that Plaintiffs are the prevailing party. To encourage private citizens to bring actions for injunctive relief that advance the public interest in vindicating civil rights, "the prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart,* 461 U.S. 424, 429 (1983) (citing *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 402 (1968); internal quotation marks omitted).

Calculation of a reasonable fee award involves the two-step lodestar/multiplier method. "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate. After making that computation, the district court then assesses whether it is necessary to adjust the presumptively reasonable lodestar figure on the basis of the *Kerr* factors that are not already subsumed in the initial lodestar calculation." *Morales v. City of San Rafael,* 96 F.3d 359, 363–64 (9th Cir. 1996) (citations and footnote omitted). The so-called *Kerr*

2

factors bearing on reasonableness are: "(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases." *Kerr v. Screen Guild Extras, Inc.,* 526 F.2d 67, 70 (9th Cir. 1975). Some of the *Kerr* factors – novelty, skill, and results obtained – are now subsumed in the initial lodestar calculation. *Morales,* 96 F.3d at 364 n.9. Also, contingency multipliers are no longer permitted in civil rights litigation. *Gates v. Deukmejian,* 987 F.2d 1392, 1403 (9th Cir. 1992).

        b.    *Sigale's Lodestar*

        Attorney Sigale, lead counsel for Plaintiffs, claims 109.2 hours at $500 an hour, totaling $54,600.00; and 102.9 hours of travel time at $250 an hour, totaling $25,725.00. The travel time is mainly for two trips to Saipan from Chicago, where Sigale is based.

        In determining a reasonable hourly rate, the district court considers the requesting attorney's experience, skill, and reputation. *See Webb v. Ada County,* 285 F.3d 829, 840 and n.6 (9th Cir. 2002). The fee applicant has the burden "to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson,* 465 U.S. 886, 895 n.11 (1984).

        Sigale appeared in this case pro hac vice. In a declaration in support of this request (ECF No. 62-10), he states that he has been in practice since 1996 and started his own civil litigation firm in 2007. A focus of his practice is civil rights litigation, in particular § 1983 claims for violations of the

3

First, Second, and Fourth Amendments. He has been counsel or co-counsel in several high-profile Second Amendment cases, including *McDonald v. City of Chicago,* 130 S.Ct. 3020 (2010), and *Ezell v. City of Chicago,* 646 F.3d 992 (7th Cir. 2011). He asserts that the number of experienced Second Amendment practitioners across the country is smaller than in other areas of law.

Sigale's standard rate is $500 an hour. He asserts that this is a reasonable rate in the specialized community of constitutional civil rights advocates. He has been compensated at that rate, by agreement with government entities and with court approval, in Second Amendment cases in several districts nationwide. (*See* orders and stipulations, attached as ECF No. 62-2 through 62-7.) The USAO Attorney's Fee Matrix for 2015–16 shows a fee of $504 an hour for attorneys with 16–20 years' experience.

Defendants object that the "community" in which a reasonable rate must be established is the CNMI, that Plaintiffs have not presented evidence of the prevailing rate in the CNMI, and that in fact the prevailing rate here is considerably less than $500 an hour.

The general rule in the Ninth Circuit is that "when determining a reasonable hourly rate, the relevant community is the forum in which the district sits." *Camacho v. Bridgeport Financial, Inc.,* 523 F.3d 973, 979 (9th Cir. 2008). However, "rates outside the forum may be used if local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case." *Id.* (quoting *Barjon v. Dalton,* 132 F.3d 496, 500 (9th Cir. 1997)). "In making the award, the district court must strike a balance between granting sufficient fees to attract qualified counsel to civil rights cases and avoiding a windfall to counsel." *Moreno v. City of Sacramento,* 534 F.3d 1106, 1111 (9th Cir. 2008). "The way to do so is to compensate counsel at the prevailing rate in the community for similar work; no more, no less." *Id.* "Community" may refer to "a community of practitioners" when the subject matter of

4

1   the litigation is "one where the attorneys practicing it are highly specialized and the market of legal

2   services in that area is a national market." *Kaylor-Trent v. John C. Bonewicz, P.C.,* 916 F. Supp. 2d

3   878, 884 (C.D. Ill. 2013)

4        The Court finds that this is the type of exceptional civil rights case where the relevant

5   community is national, not local. This is the first gun-rights case to be brought in this District. The

6   area of Second Amendment law is highly specialized. The number of active private attorneys in the

7   CNMI bar cannot be much more than a hundred, most of whom have never brought a civil rights case.

8   For many local attorneys, this would have been an undesirable case to take. The CNMI has practically

9   no history of private ownership of handguns or any other firearms besides hunting rifles. The prospect

10  of opening up a private market for handguns in the CNMI has been met with something less than

11  widespread public support. At the hearing, Guidotti represented to the Court that six or seven

12  prominent local attorneys had turned the case down before he, one of the younger members of the bar,

13  agreed to serve as local counsel. For these reasons, the Court finds that Sigale's fee of $500 an hour is

14  reasonable.

15       An attorney's travel time is typically included in his or her expenses. *See Int'l Woodworkers,*

16  *Local 3-98 v. Donovan,* 792 F.2d 762, 767 (9th Cir. 1986). Billing that time at half the attorney's usual

17  rate, as Sigale has done, is reasonable. *See In re Washington Pub. Power Supply Sys. Sec. Litig,* 19

18  F.3d 1291, 1299 (9th Cir. 1994) (affirming reduction in travel time award by 50 percent when time

19  was billed at counsel's full rate). Sigale flew to Saipan twice for oral argument on dispositive motions

20  for summary judgment. The first oral argument, set for March 10, 2015, was canceled when on March

21  8 the Court denied the first motion. Sigale, however, had no way of knowing that the Court would rule

22  on the papers, and he was already in the air when the order issued. That the trip turned out to be

23  unnecessary is not his fault.

Defendants challenge many of the fees sought as being excessive for the type of work performed. "On review of a fee application, the district court must consider whether the work performed was legal work in the strict sense or was merely clerical work that happened to be performed by a lawyer." *Johnston v. Harris Cnty. Flood Control Dist.,* 869 F.2d 1565, 1583 (5th Cir. 1989) (citation and quotation marks omitted). "It is appropriate to distinguish between legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics and other work which can often be accomplished by non-lawyers but which a lawyer may do because he has no other help available. Such non-legal work may command a lesser rate. Its dollar value is not enhanced just because a lawyer does it." *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717 (5th Cir. 1974), *cited with approval in Missouri v. Jenkins by Agyei,* 491 U.S. 274, 288 n.10 (1989).

The work that Defendants say should not be compensated at the full $500 rate is the drafting, filing, and completion of: (1) Sigale's pro hac vice application; (2) a civil cover sheet; (3) Sigale's ECF registration; (4) Sigale's entry of appearance; (5) an exhibit list for the summary judgment motion; (6) summons of and service of process on Defendant Larson.

Defendants object to Sigale's claim of 1.8 hours for his pro hac vice application. Some courts categorize the preparation and filing of pro hac vice applications as "non-legal clerical tasks" and compensate them at the paralegal hourly rate. *See Osterweil v. Bartlett,* 92 F.Supp.3d 14, 37 (N.D.N.Y. 2015); *Bretana v. Int'l Collection Corp.,* 2010 WL 2510081, *5 (N.D. Cal. June 17, 2010) (noting that application was prepared by paralegal). Others do not question billing of the application process at attorney rates but find the time billed to have been excessive. They note that the applications require no legal research, are made on standardized forms, and call only for updating information saved on the firm's computer from prior applications. *See Employers Ins. Co. of Wausau v. Harleysville Ins. Co. of N.J.,* 2008 WL 5046838, *3 (D.N.J. Nov. 20, 2008) (4 hours cut to 2 hours); *Pretlow v.*

6

1    *Cumberland Cnty. Bd. of Social Svcs.,* 2005 WL 3500028, *6 (D.N.J. Dec. 20, 2005) (1.5 hours cut to

2    0.5 hours). Still other courts treat the application process as purely clerical/secretarial work and

3    therefore noncompensable. *See Robertson v. Standard Ins. Co.,* 2016 WL 406343, *3 (D. Or. Jan. 31,

4    2016); *but see Elder v. NCBE,* 2011 WL 4079623, *4 (N.D. Cal. Sept. 12, 2011) (finding that tasks

5    such as preparing pro hac filings are not clerical).

6          The Court agrees with Defendants that work on the pro hac vice application should not be

7    compensated at the attorney rate. It does not require legal skill to fill out this district's application,

8    which is available in a standardized online form and asks for contact and bar admission information.

9    The Court will cut this award in half, from $900.00 (1.8 hours at $500 hour) to $450.00.

10         Defendants object to billing for preparation of a civil cover sheet, completion of ECF

11   registration, and drafting of an entry of appearance and an exhibit list, as well as for correspondence

12   with local counsel about such matters. These tasks are either clerical or paralegal work, but not billable

13   at attorney rates. *See Wright v. Astrue,* 2011 WL 5441013, *1 (E.D. Okla. Nov. 9, 2011) (finding that

14   preparation of civil cover sheet and review of return of service on summons are clerical tasks not

15   compensable at counsel's hourly rate); *Bratton v. Thomas Law Firm, PC,* 943 F. Supp. 2d 897, 909

16   (N.D. Ind. 2013) (finding that drafting a civil cover sheet and mailing appropriate documents require

17   some degree of legal training and are not merely clerical tasks, and therefore are recoverable at

18   paralegal rates); *Davis v. Sec'y of HHS,* 2012 WL 4748079, *3 (Fed. Cl. Sept. 6, 2012) (surveying

19   case law from N.D. Cal. and D. Hawaii regarding charge for creating tables of contents and

20   authorities). The Court will halve this compensation. Sigale requested $550.00 (1.1 hours at $500

21   hour); the Court will award him $275.00.

22         Defendants object to compensating Sigale for drafting an amended complaint and summons to

23   bring Defendant Larson into the lawsuit, and for doing legal research on service of process on her. For

reasons that will be made clear shortly, the Court will allow Sigale's full fee for drafting the amended complaint. However, the Court agrees with Defendants with respect to time spent on the summons, which could have done by local counsel at a more modest hourly rate. Sigale requested compensation at $500 an hour for 0.4 hours' work on the summons on March 26, 2015; the Court will award him $100.00.

Defendants object to having to pay at all for Sigale's consultations with Gray Peterson, and in particular for travel to and from Hyatt Regency O'Hare to meet with Peterson. Sigale has billed 2.5 hours at $500 an hour, totaling $1,250.00, as well as $1,225.00 in travel time (4.9 hours at $250 an hour) and $132.71 in unspecified costs at the Hyatt Regency. Peterson is an open-carry advocate who was the named plaintiff in the leading Tenth Circuit case, *Peterson v. Martinez,* No. 11-1149. At the hearing, Sigale stated that Peterson's experience in litigating Second Amendment cases was valuable to Plaintiffs and helped move the litigation forward. Local counsel Guidotti estimated that his conversations with Peterson, who lives in Washington State and is familiar with Ninth Circuit precedent in Second Amendment jurisprudence, saved him several hours of research.

Time spent in consultation with third parties is compensable if it contributed to the representation. *See Hertz Corp. v. Caulfield,* 796 F. Supp. 225, 227 (E.D. La. 1992). Where the claimant does not carry his burden of showing that outside consultation with an expert was necessary, compensation may be denied. *Halderman by Halderman v. Pennhurst State School & Hosp.,* 49 F.3d 939, 943 (3d Cir. 1995).

The Court finds that Plaintiffs have demonstrated that Sigale's consultation with Peterson was warranted, but not that Sigale needed to meet with Peterson face to face. At the hearing, Sigale explained that Peterson provided him the pertinent facts concerning the Radiches' experience as well as introduce him to the unique laws of the Commonwealth. Therefore, the Court will award Sigale the

1  full fee of $1,250.00 for his time consulting with Peterson, but will not give him travel expenses or

2  hotel costs.

3          c. *Adjustment of Sigale's Lodestar*

4          Defendants object to paying for the time it took Plaintiffs' attorneys to draft three amended

5  complaints and for Sigale's travel to Saipan to argue the first "frivolous" (Defendants' word, ECF No.

6  65, p. 12) summary judgment motion. In their view, this expense could have been avoided if counsel

7  had competently drafted the initial complaint. In essence, they request a significant downward

8  adjustment of the lodestar.

9          A court may reduce the attorney fees of a successful civil rights litigant if the attorney

10  unnecessarily prolonged the case and increased the litigation's cost. *Lynn v. Maryland*, 295 F. Supp.

11  2d 594, 596 (D. Md. 2003). Likewise, the court may sanction the government by enhancing attorney

12  fees if its takes an "unwavering and litigious position throughout the litigation" and unnecessarily

13  prolongs the litigation by thwarting the plaintiff's attempts to bring it to a conclusion. *Louis v. Nelson,*

14  646 F. Supp. 1300, 1318 (S.D. Fla. 1986). *See Wilden Pump & Engineering Co. v. Pressed & Welded*

15  *Products Co.,* 570 F. Supp. 224, 227 (N.D. Cal. 1983) ("In setting costs awarded to [plaintiff], this

16  Court will take due note of whether . . . unreasonable intransigence on either, or both, litigants' parts

17  unnecessarily prolonged the litigation, and increased the attorney's fees."). Any attorney who "so

18  multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to

19  satisfy personally the excess costs, expenses, and attorneyes' fees reasonably incurred because of such

20  conduct." 28 U.S.C. § 1927.

21          A review of the history of this litigation should clarify whether either party unreasonably

22  prolonged it.

23

- On September 5, 2014, Plaintiffs brought a § 1983 action against then Commissioner James C. Deleon Guerrero of the CNMI Department of Public Safety for refusing to issue them permits to possess and carry a handgun for self-defense, in violation of the Second Amendment. (Complaint, ECF No. 1.) They sought a declaration that 6 CMC (N. Mar. I. Code) § 2206, which effectively prohibited possession of firearms for self-defense, and 6 CMC § 2222(e), which prohibited the importation, sale, and possession of handguns, are unconstitutional.

- On October 15, Defendant Guerrero, represented by the Commonwealth Attorney General (hereinafter "the Commonwealth"), answered the complaint. (Answer, ECF No. 9.)

- On October 31, the Court held a case management conference. The parties agreed that the matter presented purely legal issues that could be resolved on the merits on an expedited schedule, without discovery. Plaintiffs agreed to file a motion for summary judgment by December 31. By later stipulation, the deadline was extended by ten days.

- On January 10, 2015, Plaintiffs timely filed a motion for summary judgment (ECF No. 16).

- On February 9, the Commonwealth timely filed an opposition (ECF No. 20). In addition to responding to the substance of Plaintiffs' Second Amendment challenge, the Commonwealth asserted that Plaintiffs lacked standing and therefore the Court lacked subject matter jurisdiction. In particular, it argued that for Plaintiffs' injury to be redressed by a favorable decision, the Court would have to order a Commonwealth official to allow the importation of handguns into the CNMI. Because 6 CMC § 2302(a) assigns responsibility for customs to the CNMI Customs Service, a division of the

10

Department of Finance, the Finance Secretary would have to be joined as a defendant before the Court could give Plaintiffs complete relief.

- On March 10, the Court dismissed the case without prejudice for lack of standing and gave Plaintiffs leave to amend the complaint specifically to include handgun importation bans in the Commonwealth Code and to serve process on any necessary parties.  (Order, ECF No. 26.) The Court did not address three other challenges to standing that the Commonwealth had raised in its opposition.

- On March 21, Plaintiffs filed a first amended complaint (ECF No. 27), adding Larissa Larson, Secretary of the Department of Finance, as a defendant, and challenging customs laws governing the importation of handguns (6 CMC § 2301–2303).

- On April 13, Plaintiffs asked leave of the Court to file a second amended complaint that would respond to other standing issues the Commonwealth had raised. In their Motion for Leave, they noted that they had sought the Government's consent, pursuant to Fed. R. Civ. P. 15(a)(2), to expand the first amended complaint to include matters beyond the scope of the Court's leave to amend, *and that the Commonwealth's counsel had declined to give it*. (ECF 30, Memo. at 1-2.) Plaintiffs then complied with the Court's Order and filed a First Amended Complaint, and thereafter sought Court approval by a motion to further amend it.

- The following day, the Commonwealth filed its statement of non-opposition to the Plaintiffs' motion for leave to file a second amended complaint. (ECF 31.) The Court granted the Plaintiffs' Motion for Leave hours later (ECF No. 33).

- On April 22, Plaintiffs filed a second amended complaint (ECF No. 34).

11

- On May 21, the Commonwealth filed a motion to dismiss the second amended complaint (ECF No. 37), asserting that standing was still lacking because Plaintiffs had failed to allege that except for the challenged CNMI laws, they are legally eligible to possess firearms. Plaintiffs' opposition was due June 4, and the motion was set to be heard on June 18.

- Prior to the June 4 due date, Sigale and defense counsel James Zarones exchanged e-mails in which they seemed to agree that the complaint could be further amended so as to resolve the issues raised in the motion to dismiss. Also, Zarones agreed to stipulate that Sigale could appear at the June 18 hearing telephonically.

- On June 6, Sigale filed the motion to appear telephonically (ECF No. 38), and on June 8. the Court granted it. (ECF No. 39.)

- When by June 14 Plaintiffs had not moved for leave to file a third amended complaint, the Commonwealth filed a motion for summary disposition – to dismiss the case with prejudice because Plaintiffs had not filed a written opposition to the motion to dismiss. (ECF No. 40.)

- On June 15, Plaintiffs moved for leave to file a third amended complaint (ECF No. 42), which they attached to the motion, and opposed the Commonwealth's pending motion to dismiss.

- The next day, the Court, after reviewing the number of motions filed only days prior to the June 18th hearing and recognizing that all the pending motions including the Commonwealth's motion to dismiss would be mooted by the amendment, granted Plaintiffs leave to amend (ECF No. 43).  The proposed third amended complaint was accepted as filed, and the Commonwealth was ordered to respond.

12

- On July 1, the Commonwealth answered the third – and final – amended complaint. (ECF No. 44.)

Plaintiffs' attorneys did not unreasonably prolong the litigation or display incompetence in the representation. The initial complaint's defect of standing was far from obvious. Indeed, it took the Commonwealth five months to spot it. The Commonwealth answered the complaint instead of moving to dismiss it for lack of subject matter jurisdiction, as permitted by Rule 12(b)(1) of the Federal Rules of Civil Procedure, and did not call attention to the jurisdictional problem until it opposed Plaintiffs' summary judgment motion. The Court will assume that defense counsel did not become aware of the problem until he starting working on the opposition brief, or else he would not have represented to the Court at the first case management conference that the case was ripe for decision on the merits.

As to defects that the Commonwealth alleges existed in the first and second amended complaints, the Court never had occasion to rule on them, for Plaintiffs promptly further amended their complaint in response. Defense counsel seems to regard Plaintiffs' response as an admission that the Commonwealth's motion to dismiss had merit. However, it may merely be that Plaintiffs were choosing the path of least resistance – and least expense – to get to the merits of the lawsuit. It can take much less time and money to amend a complaint to appease a litigious defendant than to fight a war of a thousand cuts.

If any party unnecessarily prolonged this litigation, it was Defendants. Commonwealth laws effectively banned the possession, sale, and importation of handguns to private citizens. Blanket bans clearly violate the Second Amendment. The only seriously contested legal question was whether the Second Amendment as expounded by the Supreme Court in *District of Columbia v. Heller,* 554 U.S. 570 (2008), and as applied in the states through *McDonald,* also applies in the CNMI. Unless the Commonwealth had a good-faith belief that neither of the Radiches was a law-abiding resident who,

13

in a state or territory where the Second Amendment applies, had a constitutional right to bear arms, this matter was eventually going to be decided on the merits and was not going to go away on a technicality.

On this broad view of the litigation, the Court believes it would be within its discretion to adjust the lodestar *upward* for Plaintiffs. It will not do so, however. Although the Commonwealth's jurisdictional challenge was delayed, the Court ultimately found it was correct. The e-mail exchange after the Commonwealth filed its motion to dismiss shows defense counsel to have been receptive, at least initially, to stipulating to amend the complaint. One can imagine less confrontational and more collegial responses in *civil* litigation to Plaintiffs' failure to promptly file an amended complaint than to move for summary disposition. But Plaintiffs' counsel was not without fault in this misunderstanding. For these reasons, the Court will decline to adjust the lodestar in either direction.

To summarize: The Court will reduce Sigale's award at his full rate from the requested $54,600.00 to $53,875.00, and will reduce his award for travel time from $25,725.00 to $24,500.00. Hotel charges of $132.71 from the meeting with Peterson will be deducted from the award of costs.

d.      *Guidotti's Lodestar and Adjustment*

Local counsel Guidotti has requested compensation for 87.7 hours' work at $175 an hour, for a total of $15,347.50. He has submitted a detailed log of his time, billed in increments of one-tenth of an hour and with clear descriptions of the work performed. (*See* Invoice, ECF No. 62-11.) In his declaration, he states that he graduated from law school in 2009; that he was admitted to the California bar in 2009 and the CNMI bar in 2013; that he worked as a public defender and then as in-house counsel for a private company before opening his own practice in 2014. He submitted the declaration of another young lawyer who recently went into private practice in the CNMI and who has less legal

experience than Guidotti; she charges $165 an hour. (*See* ECF No. 62-13.) Based on this record, the Court finds $175 an hour to be a reasonable rate for Guidotti.

The Commonwealth objects to some of the work that Guidotti did as duplicative of work performed by Sigale. In particular, the Commonwealth objects to having to pay Guidotti for time spent shepharding Sigale's pro hac vice application (2.3 hours), reviewing complaints and summons and the CNMI's service statutes (1.2 hours), and contacting the Clerk's Office about Sigale's telephonic appearances (0.3 hours).

A district court may "reduce an award for attorney's fees for unnecessarily duplicative work[.]" *Mendez v. Cnty. of San Bernardino,* 540 F.3d 1109, 1130 (9th Cir. 2008), *overruled on other grounds by Arizona v. ASARCO LLC,* 773 F.3d 1050 (9th Cir. 2014). Local counsel in this District is required to "at all times meaningfully participate in the preparation and trial of the case with the full authority and responsibility to act as attorney of record for all purposes." LR 83.5.f. All the time Guidotti spent to make sure Sigale complied with local procedures was time he was obligated to spend on the case. The Court could have held him to answer for any deficiencies in the filings. None of this work was *unnecessarily* duplicative.

That does not mean all Guidotti's work should be compensated at the full fee. The Court has already found that work on a pro hac vice application should not be compensated at the regular attorney rate. Neither should clerical tasks like setting up telephonic appearances. Therefore, the award for those 2.6 hours will be halved, to $227.50. Review of complaints and summonses is compensable at the full rate, however. Although some filings can be prepared by clerks or paralegals, the attorney is ultimately responsible for all representations to the Court. Therefore, the 1.2 hours billed for such review at Guidotti's regular rate of $175 an hour will not be reduced.

1    Defendants object to having to pay for Guidotti's work on the first summary judgment motion

2    and the amended complaints, just as they objected to having to pay for Sigale's work on them.

3    Likewise his consultations with Peterson. For the reasons already given in the discussion of a possible

4    adjustment to Sigale's award, the Court denies these objections. In summary, the Court will reduce

5    Guidotti's award of attorney fees from the requested $15,347.50 to $15,120.00.

6        e.    *Calculation of Costs*

7        In their motion, Plaintiffs request $8,241.33 in costs. However, the itemized costs submitted

8    by Sigale (ECF No. 62-1) and Guidotti (ECF No. 62-11) actually total $8,276.33:

| | | |
|---|---|---|
| Hyatt Regency O'Hare | 11/18/2012 | $61.07 |
| Hyatt Regency O'Hare | 11/24/2013 | $71.64 |
| Civil action filing fee | 9/5/2014 | $400.00 |
| Postage, pro hac application | 9/8/2014 | $5.75 |
| Service of process | 9/12/2014 | $25.00 |
| Pro hac fee | 10/8/2014 | $250.00 |
| Airfare, Chicago-Saipan | Mar-15 | $1,938.60 |
| Hotel, Saipan | Mar-15 | $1,187.25 |
| Transportation, Saipan | Mar-15 | $204.00 |
| Meals, Saipan | Mar-15 | $170.20 |
| Service of process (Guidotti) | 4/1/2015 | $50.00 |
| Airfare, Chicago-Saipan | Nov-15 | $3,140.86 |
| Hotel, Saipan | Nov-15 | $513.00 |
| Transportation, Saipan | Nov-15 | $134.00 |
| Meals, Saipan | Nov-15 | $107.46 |
| PACER fees (Guidotti) | 11/2/2015 | $17.50 |
| | | **$8,276.33** |

    Because line items are being struck, the Court will start from the actual total of costs. After

deducting $132.71 in Hyatt Regency O'Hare charges, the Court will award $8,143.62 in costs.

//

/

16

### III.    CONCLUSION

For the reasons stated above, Plaintiffs' Motion for Attorney Fees and Expenses (ECF No. 61) is GRANTED IN PART and DENIED IN PART.

The Court awards Plaintiffs attorney fees in the amount of **$93,495.00** (comprising $78,375.00 for Sigale's work and $15,120.00 for Guidotti's work) and costs in the amount of **$8,143.62**.

Defendants shall pay the total fees and costs awarded in this matter within thirty (30) days of this order.

SO ORDERED this 20th day of September, 2016.

RAMONA V. MANGLONA
Chief Judge